# Guidance SOFTWARE®

The World Leader in Digital Investigations™

July 22, 2009

PLAINTIFF'S EXHIBIT NO.  4
CASE NO.:  MJG-06-2662
IDENTIFICATION:  12-1-09
ADMITTED:  12-1-09

Randell C. Ogg
The Law Offices of Randell C. Ogg
1150 Connecticut Ave., 9th Floor
Washington, DC 20036

Victor Stanley, Inc. v. Creative Pipe, Inc., et. al.
United States District Court - District of Maryland
Case Number:  MJG-06-2662 (PWG)

RE: Summary of Preliminary Findings

Dear Mr. Ogg:

In accordance with the Court's request of July 21, 2009, I am writing to outline my preliminary findings relating to the SimpleDrive External Hard Drive (EHD), the forensic image of Mark Pappas laptop, and the restored email data from the provided backup tapes of the "Old Server".

All of the work I have undertaken regarding the matters outlined in and authorized by the Court during the mediation session of June 16, 2009 has been done in <u>full</u> consultation with Genevieve Turner, ESI Consultant for the defendant. Ms. Turner and I have communicated on a regular basis where we have discussed, in detail, all of the facts and preliminary findings below.

I am also attaching my prior correspondence with Mr. Rothschild regarding these matters and my transmittal of information and data to him.

It is my opinion that the following facts are true based on my examination of the forensic image of Mark Pappas's laptop, acquired by Ms. Turner on February 23, 2007, and the restored email data from the provided backup tape sets:

SimpleDrive EHD

1. The laptop's operating system recorded the SimpleDrive EHD was connected for the first time on July 10, 2006.

2. The SimpleDrive EHD has a feature for a "one-click" process that makes it easy for the user to use the EHD as a backup device for a personal computer. The software which enables this feature was installed on Mark Pappas' laptop on July 10, 2006, within minutes of the device being first connected.

**Guidance** SOFTWARE   The World Leader in Digital Investigations ™

3. On July 10, 2006, through the use of this backup software, 63,071 files were downloaded from Mark Pappas' laptop to the SimpleDrive EHD.

4. The laptop's operating system recorded the SimpleDrive EHD was last connected on November 7, 2006. According to the report of Ms. Turner dated March 5, 2009, Mr. Pappas asserted that "this hard drive failed and was returned back to the merchant; and therefore, he no longer has it in his possession." The SimpleDrive EHD could not have been returned to the "merchant" by Mr. Pappas prior to November 7, 2006.

5. On November 20, 2006, the backup software associated with the SimpleDrive EHD was run on Pappas' laptop and a few hours later it was uninstalled. Given that the backup software is designed to work with the SimpleDrive EHD, it is highly likely that the device was connected to Pappas' laptop continuously from November 7 to November 20, as there were no new connections recorded by the operating system during that period.

6. I found no evidence of any failure of the EHD. Indeed, the backup software tied to this device was run multiple times by the user account associated to Mark Pappas during the period it was first installed on July 10, 2006, and when it was uninstalled on November 20, 2006.

Pappas' Laptop - General Information

1. I understand that Ms. Turner made arrangements to come to Creative Pipe's offices to forensically image Pappas' laptop for discovery purposes during the week of February 20, 2007 and that Pappas' laptop was subsequently imaged by Ms. Turner on February 23, 2007.

2. According to Mark Pappas's Affidavit of January 29, 2007, Mr. Pappas' laptop (a Compaq NC 6000) was his normal work computer at Creative Pipe. Further, he stated access to the laptop was password protected.

Pappas' Laptop - File System Activity

1. On July 6, 2009, a DVD containing the first set of deliverables from Mark Pappas's Laptop, per the ESI search and collection protocols agreed to during the mediation meeting of both parties with Judge Grimm on June 16, 2009, was delivered to Mr. Rothschild, attorney for the defendant, and a file copy of same to Ms. Turner. The DVD, in part, contained the following:

   a. A listing of all file objects and their respective file system metadata. This listing was generated using EnCase v6.13 and outputted to a standard text based CSV formatted file, which can be viewed using any modern spreadsheet application such as Microsoft Excel.

215 North Marengo Avenue, Suite 250, Pasadena, California 91101 | tel.626 229 9191 | fax. 626 229 9199 | www.guidancesoftware.com

**Guidance** SOFTWARE | The World Leader in Digital Investigations™

    b.  A listing of all <u>deleted</u> file objects and their respective file system metadata. This listing was generated and outputted the same as the listing in point 1 above.

    c.  A listing of file objects that were <u>deleted</u> using the Recycle Bin function. This listing was generated and outputted the same as the listing in point 1 above.

2.  On July 10, 2009, per the email instructions of Mr. Rothschild, I provided these three (3) file listings to you. A review of the listed files and their associated file system metadata from October 11, 2006 through February 23, 2007 showed the following number of file deletions[1] for the listed file types during the time periods shown:

| File Type | 10/11/2006 Through 11/17/2006 | 11/18/2006 Through 12/22/2006 | 12/23/2006 Through 02/01/2007 | 02/02/2007 Through 02/23/2007 | Totals |
|---|---|---|---|---|---|
| Doc | 1 | | 2,245 | 918 | 3,164 |
| Dwg | 10 | | 161 | 194 | 365 |
| Jpg | 332 | 11 | 3,404 | 1,814 | 5,561 |
| Mpg | | | 4 | | 4 |
| Pdf | 4 | | 688 | 255 | 947 |
| Rtf | | | 7 | | 7 |
| Tif | 4 | | 69 | 12 | 85 |
| Xls | | | 2,035 | 216 | 2,251 |
| Zip | 2 | 2 | 669 | 907 | 1,580 |
| Totals | 353 | 13 | 9,282 | 4,316 | 13,964 |

3.  During an approximate 40 minute period on the afternoon of Wednesday, January 31, 2007, there were a total of 9,234 deletions comprising almost the entirety of the above listed 9,282 file types deleted between December 23, 2006 and February 1, 2007.

4.  Starting in the afternoon of Friday, February 16, 2007 and into the early morning of Saturday, February 17, 2007, there were a total of 3,969 deletions comprising a vast majority of the above listed 4,316 file types deleted in the February, 2007 time period.

5.  The recycle bin records for 210 deleted files processed by the user account associated with Mr. Pappas during the early morning of February 17, 2007, was recovered from the unallocated space of the laptop. A review of the recovered Recycle Bin records show that the lowest Record ID has a

---

[1] These figures exclude automatic or system generated file deletions and any file activity recorded within the temporary internet folders.

215 North Marengo Avenue, Suite 250, Pasadena, California 91101 | tel. 626 229 9191 | fax. 626 229 9199 | www.guidancesoftware.com

**Guidance** S O F T W A R E

The World Leader in Digital Investigations™

value of 1256.  This indicates that at least 1255 files had already been processed through the Recycle Bin between the time that the Recycle Bin had been last emptied and the system rebooted.

6. During the late morning of Saturday, February 17, 2007 there was a user-initiated execution of the operating system's "Disk Defragmenter" utility application.  This was the first and only user initiated execution of that application on that laptop.  The running of the disk defragmentation program completed successfully and, as such, I was unable to recover any of the above listed deleted file types in any intelligible form nor was I able to recover any other information regarding the use of the systems Recycle Bin functionality.

The Back-Up Tapes

1. During the mediation meeting of both parties with Judge Grimm on June 16, 2009, Defendants agreed to provide the backup tapes for the "old server" for the period just preceding the swap of servers that occurred on April 17, 2007.  However, Defendants provided a mix of ten (10) tapes which contained two incomplete data backup sets, one for November 15, 2006 and one for January 17, 2007.  I was provided no explanation why the Defendant failed to provide the tapes for the period immediately before the swap of servers.

2. Despite the incompleteness of the tapes, a full set of email message stores was able to be restored from the January 17, 2007 tape set.  These message stores were processed in accordance with the 2007 Joint Protocol and the June 2009 Protocol that was developed during the mediation session.

3. The combined message stores contained 81,403 email messages with 30,548 attachments for a total of 111,951 items.  After processing per the agreed search and collection protocols, this body of data was reduced to 36,361 email messages with 5,174 attachments for a total of 41,535 responsive items.  A summary of the responsive items per email store is as follows:

| Folder | Administrator | CDOLL | CRAMIREZ | JEANETTE | KELLY | MARK | Totals |
|---|---|---|---|---|---|---|---|
| Calendar | | 3 | | | | | 3 |
| Contacts | | 4 | 1 | | | 19 | 24 |
| Deleted Items | 2 | 1 | 114 | 30 | 43 | 5,139 | 5,329 |
| Drafts | | | | | | 1 | 1 |
| Inbox | 3 | 28 | 1,815 | 27 | 457 | 12,286 | 14,616 |
| Personal Folders | | 12,623 | | | | | 12,623 |
| Sent Items | 1 | 7,653 | 197 | 9 | 18 | 1,046 | 8,924 |
| Tasks | | 15 | | | | | 15 |
| Totals | 6 | 20,327 | 2,127 | 66 | 518 | 18,491 | 41,535 |

215 North Marengo Avenue, Suite 250, Pasadena, California 91101 | tel.626 229 9191 | fax. 626 229 9199 | www.guidancesoftware.com

**Guidance** SOFTWARE   The World Leader in Digital Investigations™

4. Of the 5,329 responsive emails stored within the "Deleted Items" folders across all email stores, 657 were received on or after October 11, 2006.

5. In order to be perfectly clear regarding the email message stores, what was processed is what existed in the "Old Server" Exchange database as of the time of the backup occurring on January 17, 2007. Due to the nature of the tape backup and restoration process, it is not possible to locate and recover any email messages, or their respective attachments, that would have been moved to a users Deleted Items folder and then purged.

Recommendations for further Examination

I have previously suggested that the following additional forensic work be done in order to track the whereabouts of the SimpleDrive EHD in an attempt to recover any of its contents and to locate and recover any other deleted files from the Pappas laptop:

1. Guidance Software should be authorized to check the Guidance copy of the images of all CPI drives to ascertain if and when any external hard drive or storage device had been connected to that particular computer and then to provide a list of all such attachments to counsel for the parties. This would expand the last sentence of paragraph 1 of the June 16 Meeting Protocol to include all the current images in Guidance's possession. This is requested as it may help identify the existence of any other previously undisclosed external device which may contain responsive ESI.

2. That the process outlined in the first sentence of paragraph 1 of the June 16 Meeting Protocol be expanded to include Ms. Doll's computer and Ms. Hayes' laptop. This is requested because if there were substantial deletions from the Pappas laptop after the filing of the lawsuit it is a reasonable hypothesis that there were similar deletions from the other computers of key personnel. This examination also may lead to information relating to the recoverability of any data deleted from the Pappas laptop or that was copied to the SimpleDrive EHD.

3. That the ESI consultants (Ms. Turner and myself or our designees) be allowed to jointly check the previously identified Creative Pipe/Pappas computers' system registries for any attachment of the SimpleDrive EHD on or after November 7, 2006. If this check shows any such evidence of an attachment/use of the SimpleDrive EHD on or after that date, the consultants will be allowed to forensically image that computer at that time. The consultants will then develop a protocol for further forensic evaluation of the uses the SimpleDrive, its possible location, or the location of any content of that device that may have been subsequently copied or used. No access or analysis will be undertaken on the new images until the consultants agree on the protocol. This is requested to assist in both identifying the whereabouts of the missing SimpleDrive EHD and in the possible recovery of its contents. If the SimpleDrive EHD was connected to a Creative Pipe or Pappas computer anytime between the imaging of that computer in 2007 and the present then it is

215 North Marengo Avenue, Suite 250, Pasadena, California 91101 | tel.626 229 9191 | fax. 626 229 9199 | www.guidancesoftware.com

**Guidance** SOFTWARE   The World Leader in Digital Investigations ™

probable that computer contains data copied from Pappas' laptop to the SimpleDrive EHD on July 10, 2006.

4.  That Guidance Software be authorized to undertake full restorative efforts on the backup tapes and then search for responsive materials in accordance with the Joint Search Protocol and to conduct other restorative efforts as outlined in your letter of July 7, 2009 to Mr. Rothschild.  Mr. Rothschild previously rejected this request in a letter of July 9, 2009.

I renew my recommendations that above items be undertaken as soon as possible.

Lastly, I understand that Judge Grimm has ordered a meeting between both parties and their respective ESI consultants in which these preliminary findings and recommendations are to be discussed.  Unless otherwise ordered by the court, I must insist on this meeting, and any other future meetings in which Mr. Rothschild and I jointly take part, be recorded.

Respectfully,

Andreas T. Spruill
Sr. Director of Risk Management
Guidance Software, Inc.


ENCL:  (1) Letter to James Rothschild, Esq., dated July 1, 2009, RE: Production of ESI
        (2) Letter to James Rothschild, Esq., dated July 7, 2009, RE: Victor Stanley v. Creative Pipe
        (3) Letter to Randy Ogg, Esq., dated July 9, 2009, RE: Victory Stanley v. Creative Pipe

215 North Marengo Avenue, Suite 250, Pasadena, California 91101 | tel.626 229 9191 | fax. 626 229 9199 | www.guidancesoftware.com

PLAINTIFF'S EXHIBIT NO. 46
CASE NO. 8:06-cv-02662
IDENTIFICATION: DEC 01 2009
ADMITTED: DEC 01 2009

**Guidance** SOFTWARE | **Professional Services Division**

The World Leader in Digital Investigations™

# ANDREAS "ANDY" SPRUILL
## Curriculum Vitae

## Summary

Andy currently serves as the head of Risk Management for Guidance Software. In this position, Andy combines his expertise as a security professional and digital forensic expert to help Guidance identify and mitigate areas of potential risk.

Andy began his professional career by serving overseas as a Special Agent with US Army Intelligence. During his time in the military he actively took part in numerous intelligence operations in support of the Cold War and the first Gulf War. After several years of distinguished service, Andy left the military and entered the information technology industry.

In 2001, Andy was approached by the Westminster, California Police Department to help them create a unit specializing in computer forensics and high technology crime. Since that time Andy has brought his digital expertise to bear on numerous criminal cases.

Andy also makes time to share his knowledge and experience by teaching a year long Computer Forensics program at California State University, Fullerton.

## Present Employment

**Guidance Software, Inc.**

*Director of Risk Management (10/2008 – Present)*
Identify and take steps to minimize corporate risk before it is escalated to potential liability. Directly oversee all Internal Investigations, Operational Audits and eDiscovery in response to litigation.

*Director of Operations  (07/2006 – 09/2008)*
Oversee the world-wide operations of Guidance Software's Professional Services Division.

*Director, Western Region  (09/2005 – 06/2006)*
Oversee the Western US and Pacific Rim operations of Guidance Software's Professional Services Division.

*Senior Forensic Examiner  (01/2004 – 08/2005)*
Conduct forensic examinations in support of customer requests, assist and train customers in the use of EnCase software and methodology, and provide expert testimony in the field of computer forensics.

**Westminster Police Department**

*Police Officer (Reserve) (09/2002 – Present)*
Conduct forensic examinations in support of criminal investigations and assist department personnel in the investigation of high technology crime.

**California State University – Fullerton**

*Instructor, Computer Forensics  (08/2005 – Present)*
Develop and teach the curriculum for a year long program designed to meet the needs of individuals entering the field of computer forensics. The Certificate in Computer Forensics consists of five courses totaling 94 class room hours of lecture and hands-on experience.

## Education

**Master of Business Administration**
University of California – Irvine
*Graduated: 06/2000*
*Emphasis in Information Technology*

**Bachelor of Science, Psychology**
University of Maryland
*Graduated: 05/1992*

## Military Service

**United States Army**
*Counterintelligence Special Agent (04/1986 – 03/1993)*

Conducted strategic counterintelligence operations and investigations, personnel security investigations, and investigations of terrorist activity involving US Army assets.

## Training

**EnCase Network Intrusion Examinations**
*Guidance Software, Inc.*

46

## Expert Commentary

The Associated Press

Popular Mechanics

Christian Science Monitor

K-News 970AM

Incident Response, Forensic Analysis and Discovery
*Guidance Software, Inc.*

EnCase Advanced Computer Forensics
*Guidance Software, Inc.*

Investigation of Computer Crime
*SEARCH, Inc.*

EnCase Introduction to Computer Forensics
*Guidance Software, Inc.*

## Speaking Engagements

Security & Incident Response
Financial Summit 2007, Mexico City, Mexico

Portable Applications & U3: A Forensic Look
NetSec 2007, CSI, Phoenix, Arizona

Metadata and the Federal Rules of Evidence
2006 American Bar Association, SEER Annual Conference, San Diego, California

Using Computer Forensics to Counter Gang Activity
2006 Annual Intercontinental Conference on Terrorism and Asian Organized Crime Conference, Anaheim, California

Intellectual Property Theft & Loss
HTCIA 2005 Annual Training Conference & Expo, Monterey, California

Cyber-Intelligence: Definitions, Terms and Trends
NetSec 2005, CSI, Phoenix, Arizona

## Publications

Tackling the U3 Trend with Computer Forensics
*Journal of Digital Investigation, Volume 4, Issue 1, March 2007, Pages 7-12*
*http://www.sciencedirect.com*

## Testimony

Downey Savings & Loan F.A. v. Chevy Chase Bank, F.S.B.
*Superior Court of the State of California, County of Orange*
*Case Number 06CC11885*

Victor Stanley, Inc. v. Creative Pipe, Inc.
*United States District Court, District of Maryland*
*Case Number MJG-06-2662 (PWG)*

United States of America v. Eric Gaynor
*United States District Court, District of Connecticut*
*Case Number 3:06 Cr. 86 (CFD)*

People v. Jason Aguirre
*Superior Court of the State of California, County of Orange*
*Case Number 03WF1939*

William Hablinski Architecture v. Amir Construction, Inc.
*United States District Court, Central District of California*
*Case Number CV036365CAS*

Donovan Lee Black, Jr. v. Cushman Wakefield of California, Inc.
*Superior Court of the State of California, County of Los Angeles, Central District*
*Case Number BC297772*



**Mark Pappas Notebook**

Locally Stored Files & Emails

PST Files (Emails)

Network Drive (Folder)

Outlook

Network Files & Emails

**New Server**

Network Share Folders

**Christi Doll Desktop**

Locally Stored Files & Emails

PST Files (Emails)

Network Drive (Folder)

Outlook

Network Files & Emails

Exchange Server Mailbox Store

PLAINTIFF'S EXHIBIT NO.
CASE NO.: MJG-06-2662
IDENTIFICATION: 12-1-09
ADMITTED: 12-1-09
42

# LAW OFFICES OF RANDELL C. OGG, ESQUIRE

ADMITTED IN:                                    NINTH FLOOR, CONNECTICUT BUILDING
DISTRICT OF COLUMBIA                                  1150 CONNECTICUT AVENUE, NW
MARYLAND                                              WASHINGTON, D.C. 20036-4192
VIRGINIA                                              TELEPHONE: 202-862-4323
MEMBER:                                               FACSIMILE: 202-828-4130
AMERICAN BOARD OF TRIAL ADVOCATES                    rogg@bode.com

August 25, 2009

**VIA ELECTRONIC CASE FILING**

The Honorable Paul W. Grimm
United States District Court for the District of Maryland        PLAINTIFF'S EXHIBIT NO. _48_
101 W. Lombard Street                                            CASE NO.: _MJG-06-2662_
Room 8B                                                          IDENTIFICATION: _12-1-09_
Baltimore, MD 21201                                              ADMITTED: _12-1-09_

   Re: *Victor Stanley, Inc. v. Creative Pipe, Inc., et al.*
     Case No. 06-CV-2662 (MJG)(PWG)

Dear Judge Grimm:

   I am writing on behalf of counsel for all the parties relating to the Meet and
Confer regarding the findings and recommendations as outlined in the Guidance Software
Letter of July 22, 2009 ("the Letter"). The meeting took place by conference call on
August 21, 2009. The meeting was attended by Andreas Spruill, consultant for Victor
Stanley, Inc. ("VSI") and Michael Maschke, consultant for the Defendants. Counsels for
the parties also were present.

   Please be advised that the following matters were discussed and <u>agreed upon</u> by
the consultants:

1. The basic factual findings outlined at pp. 1-5 of the Letter; and

2. Recommendation 1.

The following Recommendations were agreed to in part, and disputed in part:

1. As to Recommendation 2, the consultants agreed that paragraph 1 of the June 16
Meeting Protocol should be expanded to include Pappas' home computer. They
disagreed as to whether it should be expanded to include Ms. Doll's computer or Ms.
Hayes' laptop. It was Defendants and their consultant's position that the protocol should
not be expanded to include the Doll/Hayes computers unless there was documentary
evidence that Pappas instructed them to delete files.

WDC - 028214/000001 - 2953700 v1                                                           1

2.  As to Recommendation 3, all provisions were agreed to expect for the sentence that: "No access or analysis will be undertaken on the new image until the consultants agree on the protocol." It was Defendants and their consultant's position that the consultants and the parties' counsel would have to agree on the protocol before any access or analysis would be undertaken.

3.  As to Recommendation 4, the consultants agreed that any files of a type associated with email (e.g. pst, eml, msg) be restored from both of the tape backup sets and processed per the June 16 Meeting Protocol. To date, only the Microsoft Exchange email stores from the January 17, 2007 tape backup set have been restored and processed. They disagreed as to whether the restoration, and subsequent processing, includes all restorable files contained in both of the tape backup sets. It was Defendants' counsel's position that any restoration efforts be limited strictly to emails. Defendants and Mr. Maschke would reconsider restoring files on the back-up tapes but only if those files that matched up based on available file metadata to specific files that were downloaded.

4.  The consultants agreed to continue attempts at getting a sound forensic image of the "Old Server." If a sound forensic image can be attained, the consultants agreed that any files of a type associated with email (e.g. pst, eml, msg) and the Exchange Server databases be collected, and if possible, processed per the June 16 Meeting Protocol. [1] They disagreed as to whether all files contained on the "Old Server" be processed per this protocol. Again, it was Defendants' counsel and its consultant's position that any efforts be limited strictly to emails.

Subsequent to the July 22, 2009 Report, Mr. Spruill recommended that the consultants be allowed to collect and analyze the transmittal logs for the Exchange Server and the Operating System Event Logs for the purpose of assisting the consultants in locating data helpful to possible recovery of deleted emails and other files, conducting an analysis to determine the circumstances surrounding the deletions of the emails and other deletions identified in the Spruill Report, assisting in the identification of when the deletions occurred, and in determining how and why certain data available on the Old Server was not produced in October 2007 in accordance with the Joint Search Protocol. The system logs also could assist in determining why the old server crashed. Defendants' counsel and consultant objected to the use or analysis by Guidance Software or VSI of the transmittal logs or system event logs of the "Old Server" on the grounds that a) there had been no discovery request for those system documents prior to the close of discovery, and b) they were irrelevant to the issue of deleted emails and deleted files.

This letter has been reviewed and approved by counsel for the Defendants.

---

[1] This recommendation was made subsequent to the July 22, 2009 Report and previously communicated to Defendants on August 17, 2009.

Very truly yours,

Randell C. Ogg

Cc: Counsel of Record (via ECF)

PLAINTIFF'S EXHIBIT NO.: 49
CASE NO.: MJG-06-2662
IDENTIFICATION: 12-1-09
ADMITTED: 12-1-09





Photos depict the residence owned by Mark Pappas located at 76-307 Via Montelena, Indian Well, California.

49

| Row Labels | Items |
|---|---|
| 11/20/2006 | 5602 |
| 11/21/2006 | 3 |
| 11/23/2006 | 268 |
| 11/28/2006 | 1 |
| 12/5/2006 | 7 |
| 12/6/2006 | 1 |
| 12/7/2006 | 4 |
| 12/8/2006 | 2 |
| 12/11/2006 | 4 |
| 12/12/2006 | 4 |
| 12/13/2006 | 3 |
| 12/14/2006 | 5 |
| 12/15/2006 | 3 |
| 12/16/2006 | 4 |
| 12/18/2006 | 4 |
| 12/19/2006 | 4 |
| 12/20/2006 | 2 |
| 12/21/2006 | 4 |
| 12/22/2006 | 2 |
| 12/23/2006 | 2 |
| 12/24/2006 | 571 |
| 12/26/2006 | 7 |
| 12/27/2006 | 4 |
| 12/28/2006 | 3 |
| 12/29/2006 | 1 |
| 12/30/2006 | 1 |
| 1/2/2007 | 3 |
| 1/3/2007 | 1 |
| 1/4/2007 | 3 |
| 1/5/2007 | 2 |
| 1/6/2007 | 1 |
| 1/8/2007 | 4 |
| 1/9/2007 | 3 |
| 1/10/2007 | 9 |
| 1/11/2007 | 8 |
| 1/15/2007 | 3 |
| 1/16/2007 | 7 |
| 1/17/2007 | 1 |
| Grand Total | 6561 |

PLAINTIFF'S EXHIBIT NO. _50_
CASE NO.: _MJG-06-2662_
IDENTIFICATION: _12-1-09_
ADMITTED: _12-1-09_

EnCase Enterprise Training

File Edit View Tools Help

New | Open | Save | Print | Add Device | Search | Logon | Refresh

Cases

Home | Entries | Bookmarks | Permissions | Search R4

Entries
- Entries
  - C-Drive
  - D-Drive
    - $Extend
    - 1c2a87re912b9d17d6c3d2b10f4
    - 25f97d6d4d9b0e5dbb0ffb0e3e4
    - _570859_
    - BUILDS
    - c47674755d2a696e3bba6b97dc
    - CP5
    - e3e1422d4751c5dfd2e2b0fe
    - OLD SERVER
    - Quickbooks Data
    - RECYCLER
    - System Volume Information
    - temp
    - update Files
    - Users Shared Folders
      - cderouen
      - cramirez
      - jhayes
      - Mark.copy
      - mpappas
      - New Folder
      - sales
    - WSUS

| | | Name | File Created | Entry Modified | Last Accessed | Last Written |
|---|---|---|---|---|---|---|
| 1 | | sales | 04/21/07 10:42:55PM | 10/01/08 03:09:06PM | 11/13/09 03:43:12AM | 10/01/08 03:09:06PM |
| 2 | | jhayes | 04/21/07 10:42:56PM | 06/18/08 02:09:18PM | 11/13/09 03:45:55AM | 06/18/08 02:09:18PM |
| 3 | | cramirez | 04/21/07 10:42:56PM | 11/12/09 08:26:14AM | 11/13/09 12:39:04PM | 11/12/09 08:26:14AM |
| 4 | | cderouen | 04/21/07 10:42:56PM | 11/13/09 04:11:14PM | 11/13/09 05:36:41PM | 11/13/09 04:11:14PM |
| 5 | | mpappas | 04/21/07 10:42:56PM | 09/16/09 11:07:00AM | 11/13/09 12:34:06PM | 09/16/09 11:07:00AM |
| 6 | | Creative Pipe Intro Ltr.doc | 08/31/07 12:06:14PM | 08/24/09 06:06:01PM | 11/13/09 12:16:08AM | 08/31/07 12:06:23PM |
| 7 | | New Folder | 04/22/09 09:50:49AM | 04/22/09 12:46:01PM | 11/13/09 03:43:12AM | 04/22/09 12:06:29PM |
| 8 | | Mark.copy | 06/03/09 08:21:38PM | 06/03/09 08:57:50PM | 11/13/09 03:42:15AM | 06/03/09 08:57:37PM |

PLAINTIFF'S EXHIBIT NO. 51

CASE NO. MJG-06-2462

IDENTIFICATION: 12-1-09

ADMITTED: 12-1-09

Text | Hex | Doc | Transcript | Picture | Report | Console | Details | Output | Lock | Codepage | 0j212813

63192-F02A\D-Drive\Users Shared Folders\jhayes (PS 199036584 LS 199036584 CL 24879573 SO 0D0 FO 0 LE 1)

EnScript | Hits | Filters | Conditions
- Search File Extension
- Search File Type
- Search Filenames
- Search Short Filenames
- Search File Path

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

VICTOR STANLEY, INC.,                )
                                     )
              Plaintiff,             )
                                     )
       vs.                           )  Case No.: MJG-06-2662
                                     )
CREATIVE PIPE, INC., et al.,         )
                                     )
              Defendants.            )
                                     )

VIDEOTAPED
DEPOSITION OF:          Evan DeRouen

DATE AND TIME:          June 29, 2007
                        10:01 a.m.

LOCATION:               340 South Farrell Drive
                        Suite A-202
                        Palm Springs, California

REPORTER:               Mirella O. Leyva, CSR, RPR

                        Certificate No. 11614

**PLAINTIFF'S EXHIBIT NO.** 52

**CASE NO.** MJG-06-2662

**IDENTIFICATION:** 12-1-09

**ADMITTED:** 12-1-09

11:37:15    1       A.   Yeah.

            2       Q.   Has anybody at Creative Pipe instructed you --

            3    or scratch that.

            4            Has anybody at all instructed you that as

11:37:25    5    network administrator for Creative Pipe that a

            6    litigation hold should be put on Creative Pipe's data?

            7       A.   The only thing that I was told to do was to

            8    take the -- the log files for the Exchange server and

            9    put them on a retention -- a log retention.

11:37:47   10       Q.   Okay.  So you were told to retain the Exchange

           11    server logs?

           12       A.   Correct.

           13       Q.   Were you told anything else?

           14       A.   Not that I recall.  I just needed to do that

11:37:57   15    so that those things don't get flushed.

           16       Q.   Okay.  And who were you told that by?

           17       A.   I want to say Mark and/or his attorneys.

           18       Q.   Okay.  And were you told that there should be

           19    anything else that's done as a result or because of

11:38:14   20    this litigation?

           21       A.   What do you mean?

           22       Q.   Well, did anybody come to you and say, "You

           23    need to preserve all data because of this litigation"?

           24       A.   I was told that nothing should be deleted,

11:38:30   25    yes.

                                       87

11:38:31  1      Q.   Okay.  Who told you that?

          2      A.   I want to say Mark and/or his attorneys.

          3      Q.   Okay.  And when were you told that?

          4      A.   We had a conference call several months ago.

11:38:40  5   I don't remember the exact date.

          6      Q.   Okay.  Was it in 2007?

          7      A.   Yes.

          8      Q.   Okay.  Was it in February of 2007?

          9      A.   That's quite possible.

11:38:54 10      Q.   Okay.  And do you remember what was told to

         11   you at that time?

         12      A.   Basically I was asked questions about the

         13   system.

         14      Q.   Okay.  And what kind of questions?

11:39:03 15      A.   Just their basic usage -- more or less the

         16   same things you guys wanted to know about their

         17   configuration and whatnot.

         18      Q.   Okay.  And what were you told about

         19   preservation of data at that time?

11:39:16 20      A.   Well, that we need not to delete anything.

         21      Q.   Okay.  Did you take any special actions to

         22   make sure that happened?

         23      A.   Yes.  I removed the -- the function that

         24   allowed the logs to be purged once they're backed up.

11:39:30 25      Q.   Okay.  And is that change still in place?

                                    88

```
11:39:33   1        A.   Yes.

           2        Q.   Is there anything else that you've done as a

           3   result of that conversation?

           4        A.   Other than make sure the backups are done, no.

11:39:41   5        Q.   Is there -- have there been any other

           6   conversations regarding this litigation with anyone?

           7        A.   No.

           8        Q.   Okay.  I think that at this point I have no

           9   further questions.

11:39:58  10        A.   Perfect.

          11        MR. MOHR:  I actually have a few.

          12        THE VIDEOGRAPHER:  Put your microphone on, please,

          13   sir.

          14        MR. MOHR:  Oh, I'm sorry.

11:40:06  15

          16                        EXAMINATION

          17   BY MR. MOHR:

          18        Q.   Okay.  When you said that the data on -- that

          19   the stuff in the individual computers is mapped to the

11:40:19  20   server, if the individual hard drives, if those were

          21   imaged, would you have -- would that be the same

          22   material that was on the server or in the server files,

          23   or would it be different?

          24        A.   It'd be different.

11:40:32  25        Q.   All right.  If you -- with respect to the --
```

| | | |
|---|---|---|
| 11:40:36 | 1 | with respect to the server logs and preservation |
| | 2 | efforts, aside from that, the deletion of any |
| | 3 | particular piece of information would basically have to |
| | 4 | be done manually, right?  I mean, somebody would |
| 11:40:50 | 5 | actually have to go in and -- |
| | 6 | A.   Yes. |
| | 7 | Q.   -- and delete a particular piece of |
| | 8 | information? |
| | 9 | A.   Yes. |
| 11:40:55 | 10 | Q.   All right. |
| | 11 | A.   And the only folders they would be able to |
| | 12 | delete that from would be their own. |
| | 13 | Q.   Okay.  All right.  To your knowledge, have any |
| | 14 | documents been deleted or destroyed? |
| 11:41:10 | 15 | A.   Not to my knowledge. |
| | 16 | Q.   Okay, I don't have any more questions. |
| | 17 | |
| | 18 | FURTHER EXAMINATION |
| | 19 | BY MR. WOLINSKY: |
| 11:41:32 | 20 | Q.   Just to make sure I'm clear, I have one more |
| | 21 | question, I think.  That question is:  If an individual |
| | 22 | user went into their folders stored on the server and |
| | 23 | deleted files one month ago, Creative Pipe would no |
| | 24 | longer have a backup of those files and -- from their |
| 11:41:54 | 25 | system; correct? |

90

| | | |
|---|---|---|
| 11:41:58 | 1 | A.   Yeah.   No, if they deleted the files they |
| | 2 | would not be there.   The main backup gets overwritten |
| | 3 | on every two-week period. |
| | 4 | Q.   And was there any steps that were put in place |
| 11:42:10 | 5 | to prevent anyone from deleting files from the file |
| | 6 | server? |
| | 7 | A.   No. |
| | 8 | Q.   Could steps have been taken to prevent that? |
| | 9 | A.   A policy could be set, but I was not |
| 11:42:23 | 10 | requested. |
| | 11 | Q.   What kind of policy would that be? |
| | 12 | A.   A group policy. |
| | 13 | Q.   And what would -- the policy would be, no |
| | 14 | deletions? |
| 11:42:29 | 15 | A.   Yeah, it would be, doesn't have the ability to |
| | 16 | write or delete files. |
| | 17 | MR. WOLINSKY:   Okay.   I have nothing further. |
| | 18 | THE VIDEOGRAPHER:   Are we all done, gentlemen? |
| | 19 | MR. WOLINSKY:   I believe so.   Thank you very much |
| 11:42:46 | 20 | for your time, Mr. DeRouen.   I appreciate it. |
| | 21 | THE WITNESS:   Thank you. |
| | 22 | MR. OGG:   Somebody just may want to let him know |
| | 23 | about his waiver -- his reading rights. |
| | 24 | MR. MOHR:   Yeah, you have -- you're going to get -- |
| 11:42:54 | 25 | under the Federal Rules, you have a right to review |

From: Mark Pappas [mark@creativepipe.com]
Sent: Monday, October 26, 2009 2:57 PM
To: James A. Rothschild
Subject: FW: Deleted files

Here is the e-mail from Evan.  While he fails to mention the exact date, it was
the Jan. 31 deletions to which he is referring based on the conversation we had
and on the fact that these definitely were not done by me.

Also, as discussed the broken laptop of Jeanette's will be sent off to Guidance.
I did not know Evan agreed to do this with Andy.

Thanks,

Mark Pappas
Creative Pipe, Inc.
www.creativepipe.com
-----Original Message-----
From: ev.rouend@gmail.com [mailto:ev.rouend@gmail.com] On Behalf Of evan
Sent: Friday, October 23, 2009 10:43 AM
To: mark@creativepipe.com
Subject: Deleted files

Mark,
Per our brainstorming conversation yesterday, I think we have figured out just
how and where these "deleted files" are. Basically they are still on the server,
there are 3 copies of your home folder in there.
1 is called Mark, that is your working  home directory. The other 2 are copies
created at different points for preservation and maintenance reasons. Those
directories are called Mark copy and New Folder. Some time ago you were having
trouble with the synchronization of your home folder. Your frustration with it
was getting high and you were leaving to go on a trip. You had called me up to
have me copy your home directory over to your laptop locally. I came in and
started the copy of "mark copy" into your laptop. There was a reason I had to
stop the copy but I don't remember now why, I think maybe it was taking a long
time to copy all the files. So there was only a partial copy of the directory on
your laptop. I think we discussed it and decided that it would be good enough
for your trip and we would sort out the issues with the sync when you got back.
When you got back you called me in, and I worked on the sync. Once that was
fixed and tested I deleted the copy of your data (mark copy) I had made onto
your laptop. Technically the data that was deleted was a copy of a copy and
shouldn't be a big deal. As a matter of fact it still exists on your server in
the state it was on the day I made the transfer. I see that no preservation
violation has been made, my only regret is that I didn't remember this sooner.

--
Evan DeRouen
Rouend Computing
760.578.8101
www.rouend.com

PLAINTIFF'S EXHIBIT NO. 53
CASE NO. MJG-06-2662
IDENTIFICATION: 12-1-09
ADMITTED: 12-1-09