## THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| VICTOR STANLEY, INC. | | |
| | * | Civil No. MJG-06-2662 |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| CREATIVE PIPE, INC., ET AL. | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

This Memorandum and Order addresses Plaintiff Victor Stanley, Inc.'s Bill of Costs and Itemization of Fees and Expenses, ECF No. 388; Defendants Creative Pipe, Inc. and Mark Pappas's Opposition to Plaintiff's Bill of Costs and Itemization of Fees and Expenses, ECF No. 426; and Plaintiff's Reply thereto, ECF No. 430.[1]   A hearing was held on January 14, 2011.   On September 9, 2010, I recommended that the Court grant in part Plaintiff's Motion for Sanctions, Paper No. 341; ordered that Defendants pay "fees and costs associated with all discovery that would not have been untaken but for Defendants' spoliation, as well as the briefings and hearings regarding Plaintiff's Motion for Sanctions"; directed Plaintiff to file a bill of costs for the Court to review the costs and fees for reasonableness; and directed Defendants to file any objection to the fees and costs within thirty days.   ECF No. 378.   On November 1, 2010, Judge Garbis ordered Defendants to "pay monetary sanctions equivalent to Plaintiff's attorney's fees and costs associated with all discovery that would not have been un[der]taken but for Defendants'

---

[1] Judge Garbis has referred this case to me to resolve discovery disputes and related scheduling matters. Paper No. 21.

spoliation, as well as the briefings and hearings regarding Plaintiff's Motion for Sanctions." ECF No. 398.  Having received and independently reviewed the bill of costs, opposition, reply, and hearing exhibits, and having heard oral argument from counsel, for the reasons that follow, it is hereby ORDERED that relief in the form of payment by Defendants of $1,049,850.04 for attorney's fees and costs is GRANTED.  Defendants already remitted payment of $337,796.37, and shall remit payment of the balance, $712,053.67, to Plaintiff within thirty (30) days of this Order.  This Memorandum and Order disposes of ECF Nos. 388, 426, and 430.

## I.     Background

The background and intricacies of this case are set forth in detail in my Memorandum, Order and Recommendation of September 9, 2010. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 506 (D. Md. 2010).  Suffice it to say that Defendants repeatedly failed to comply with multiple court orders compelling the preservation and production of ESI in response to Plaintiff's discovery requests, and their overall behavior included spoliation of evidence and the failure of Mark Pappas, who controls Defendant Creative Pipe, Inc. and is himself a defendant, to tell the truth under oath during court hearings regarding the spoliation.  The prolonged length and enormous breadth and scope of the spoliation and other violations reached a truly extraordinary level.  As a result, the Court treated Defendants' behavior as contempt and ordered Defendants to pay Plaintiff's associated costs and attorney's fees, among other sanctions. Specifically, the Court ordered that, "[p]ursuant to Fed. R. Civ. P. 37(b)(2)(C), Defendant shall pay monetary sanctions equivalent to Plaintiff's attorney's fees and costs, which will be awarded after further briefing by the parties, and which will include fees and costs associated with all discovery that would not have been untaken but for Defendants' spoliation, as well as the briefings and hearings regarding Plaintiff's Motion for Sanctions."   Sept. 9, 2010 Order &

Recommendation, ECF No. 378.   Additionally, in its Memorandum, Order and Recommendation, the Court stated that "spoliation sanctions shall include costs and legal fees allocable to spoliation. Specifically, as Plaintiff requested, the Court shall award attorney's fees and costs, including costs related to uncovering Defendants' discovery abuses; preparing, filing, and arguing all of Plaintiff's ESI motions; and retaining Guidance Software and Andreas Spruill." *Victor Stanley, Inc.*, 269 F.R.D. at 539.

While the Court must "impose the least harsh sanction that can provide an adequate remedy," it also must engineer sanctions that "deter parties from engaging in spoliation," *id.* at 534; *see Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010); "prevent abuses of the judicial system"; and "promote the efficient administration of justice," *Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010); *see Victor Stanley*, 269 F.R.D. at 506.  Defendants' contempt unnecessarily but voraciously consumed the Court's time and resources, and assuredly burdened Plaintiff and its counsel to an even greater extent. Thus, the imposition of attorney's fees and costs as a sanction for Defendants' contempt should help "restore the prejudiced party to the same position [it] would have been in absent the wrongful destruction of evidence by the opposing party." *Pension Comm.*, 685 F. Supp. 2d at 469 (citations omitted).  In reviewing Plaintiff's Bill of Costs, the Court is mindful of the extent of Defendants' misconduct and the negligible effects of the Court's prior orders on Defendants' behavior.

## II.      Attorney's Fees

In calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th

Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted).  A trial court may exercise its discretion in determining the lodestar amount because it possesses "'superior understanding of the litigation,'" and the matter is "'essentially'" factual.  *Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir. 1986)).  To do so, this Court evaluates "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)."[2]  *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted).  Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (citing *Johnson*, 488 F.2d at 717-19).

Additionally, the party seeking fees "must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary."  *Travis v. Prime Lending*, No. 3:07cv00065, 2008 WL 2397330, at *4

---

[2] Because the sanctions here are under contempt and *Johnson* addressed attorney's fees in a fee-shifting paradigm, it is not mandatory that the *Johnson* factors govern.  Indeed, the *Johnson* factors have been deemed an "obsolete laundry list [that has been] subsumed within more refined analyses" in other contexts.  *See In re Meronk*, 249 B.R. 208, 213 (9th Cir. 2000) (addressing whether "bonus" attorney's fees were merited in bankruptcy proceeding).  Nonetheless, "*Johnson* provides guidance to Congress' intent because both the House and Senate Reports refer to the 12 factors set forth in *Johnson* for assessing the reasonableness of an attorney's fee award."  *Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989).  Thus, I will consider them, as they provide a reasoned analytical framework for review of Plaintiff's Bill of Costs.

(W.D. Va. June 12, 2008) (concluding, after an initial determination that the attorney's hourly rate was reasonable for the particular district, that attorney's fees requested by Plaintiff, based on documentation of hours worked and tasks completed, were reasonable); *Flynn v. Jocanz*, 480 F. Supp. 2d 218, 220–21 (D.D.C. 2007) (awarding requested attorney's fees based on affidavits and the record).

Also of import, Appendix B to this Court's Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, provides the following "Guidelines Regarding Hourly Rates":

a. Lawyers admitted to the bar for less than five (5) years: $150-190.

b. Lawyers admitted to the bar for five (5) to eight (8) years: $165-250.

c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-300.

d. Lawyers admitted to the bar for fifteen (15) years or more: $275-400.

e. Paralegals and law clerks: $95-115.

Loc. R. App'x B, at 3 (footnote omitted).  However, these Guidelines are not definitive; they are "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees." Loc. R. App'x B n.6.  The Court may also consider "affidavits of lawyers in the [relevant] legal community attesting to the customary rates charged for [similar matters." *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509-10 (D. Md. 2000).

In *Thompson*, 2002 WL 31777631, this Court described the burden that a party bears in establishing its fees, as well as the specificity required in challenging the party's certification of attorney's fees:

> The prevailing party bears the burden of providing this Court with sufficiently detailed time sheets to justify the hours for which an award is sought. This generally consists of an itemized listing of hours and expenses and a short description for each entry explaining how the time was spent. *See, e.g., Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92, 97-98 (4th Cir. 1993) (burden is on fee applicant to show which hours are recoverable); [*Costar*

*Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000)] (Fee applicant has burden of proving hours by submitting contemporaneous time records that reveal all hours for which payment is sought and explaining how the hours were allocated to specific tasks. The court may reduce the number of hours awarded if documentation is vague or incomplete.); *West Virginians for Life, Inc. v. Smith*, 952 F. Supp. 342, 345 (S.D. W. Va. 1996) ("The fee applicant bears the burden of producing detailed time sheets sufficient to justify the amount of hours he claims to have expended."); [*Stacy v. Stroud*, 845 F. Supp. 1135, 1143 (S.D. W. Va. 1993)] (time entries must be sufficient to document the hours worked and show that they are not excessive, redundant or otherwise unnecessary). It is not required, however, that the applicant submit minutely detailed records in support of a fee request; rather, the emphasis is on whether there is sufficient detail. [*Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986)].

While the fee applicant is under a primary duty to provide sufficient detail to justify a requested attorney's fee award, *the party or parties opposing such an award have a concomitant duty to specify with particularity the basis for their objections. To allow this Court to evaluate the objection fairly, this requires sufficiently detailed references to the challenged time entries and explanation for the basis of the challenge. See Stacy*, 845 F. Supp. at 1145 (bare assertions by the defendants that certain requests were seemingly excessive are insufficient grounds to disallow time properly spent).

. . . .

. . . . It is not the Court's burden to sift through . . . hundreds of pages of billing records to look for similar instances of allegedly improper billing entries when the challenging parties have not thought the effort sufficiently important to undertake themselves. . . . [T]he Court will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge.

*Thompson*, 2002 WL 31777631, at *9-10 (emphasis added).

Here, Plaintiff seeks a total of $936,503.75 in attorney's fees, which includes $650,428.50 for services that the Law Offices of Randell C. Ogg provided, including $5,564 in "extra fees associated with the Klein expert report and damage models" and $18,655.00 in fees associated with preparing and filing the bill of costs; and $286,075.25 for services that Hogan Lovells US L.L.P. provided, including $4,620 in fees for preparing and filing the bill of costs. Pl.'s Bill at 14. Defendants have agreed to and paid already $337,796.37 in costs and attorney's fees. Additionally, at the January 14, 2011 hearing, Defense counsel stated that the total, in

Defendants' view, should be $386,215.51 ($48,419.14 more than originally estimated), plus the fees associated with preparing and filing the bills of costs.

In addition to two detailed affidavits, Plaintiff submitted excerpts from the bills for attorney's fees from the Law Offices of Randell C. Ogg and Hogan Lovells. Pl.'s Bill, Exs. A, B, D, E, ECF Nos. 388-1, 388-2, 388-4, 388-5.   The summaries of attorney's fees from the Law Offices of Randell C. Ogg (84 pages) and Hogan Lovells (18 pages) include entries with the date, attorney, rate, and time spent, and a brief description of the service provided for each entry. Pl.'s Bill Ex. B & E. These documents provide ample detail to justify an attorney's fee award, *see Thompson*, 2002 WL 31777631, at *9, albeit with modifications discussed below.

Instead of responding in kind, Defendants elected to take a shotgun approach. They argue that Plaintiff seeks "an award of attorney's fees for legal services completely unrelated to . . . discovery required because of the spoliation and the motions and hearings related to the spoliation." Defs.' Opp'n 7-9.   Yet, they do not identify the specific entries on Plaintiff's itemization of costs and fees that, in their view, are unrelated to Defendants' spoliation.   With a similar lack of specificity, Defendants insist that "$35,385.00 in billings" for Mr. Ogg's services "do not qualify under the standard set by this Court," and argue that "an analysis of Mr. Ogg's fees and costs shows that the amount of attorney's fees and costs that should be awarded for Mr. Ogg's legal services and expenses is $268,040."   Defs.' Opp'n 3-4.   Although they describe the billing entries that "do not qualify" and attach charts listing dates, hours, and amounts for unidentified charges, Defs.' Opp'n Exs. 1-6, ECF Nos. 426-1 – 426-6, it is unclear how the charts, which do not provide descriptions of the charges, provide the details needed to support Defendants' assertions.   Moreover, it is unclear from the charts themselves whether these are charges that Defendants agree are merited or whether these are the charges that Defendants

challenge. It would be yet another labor-intensive ordeal for the Court to correlate the Plaintiff's exhibits, the narrative of Defendants' Opposition, and the Defendants' exhibits to attempt to determine which entries, in Defendants' view, should remain standing. As noted in *Thompson*, 2002 WL 31777631, at *10, it is not the Court's obligation to undertake this time-consuming task, particularly when Defendants did not themselves view it as necessary to do so.

Defendants argue that no fees or expenses prior to November 14, 2008 should be allocated to them, Defs.' Opp'n 2-3, and provided exhibits at the January 14, 2011 hearing showing that Plaintiff was not aware of Defendants' spoliation until mid-November 2008. *See* Hr'g Ex. 1 (November 25, 2008 Deposition of Gerald P. Skala at 108:18-19, 109:6-7, stating that Plaintiff discovered "[a] few days ago" that "there is a significant possibility that a whole lot of what was supposed to be on the ESI was deleted"); Hr'g Ex. 2 (Plaintiff's itemization of attorney's fees, showing a first reference to "Discovery issues and ESI matters" on November 12, 2008); Hr'g Ex. 3 (February 2, 2009 letter from Mr. Ogg to Mr. Rothschild, stating that Plaintiff "recently discovered" evidence of Defendants' spoliation and "failure to comply fully with the various Court Orders relating to ESI"). Defendants also contend that no fees or expenses after June 25, 2010 should be allocated to them because that was "the date of the final hearing on Victor Stanley's motion for terminating sanctions." Defs.' Opp'n 2-3.

At the January 14, 2011 hearing, Defense counsel quoted *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494 (D. Md. 2009) (emphasis added by Defense counsel), in which this Court stated:

> When ruling on a spoliation motion, courts will grant an award of costs or attorney's fees in four situations. First, courts will award legal fees in favor of the moving party as an alternative to dismissal or an adverse jury instruction. Second, courts will grant discovery costs to the moving party if additional discovery must be performed after a finding that evidence was spoliated. Third, in addition to a spoliation sanction, a court will award a prevailing litigant the litigant's

> reasonable expenses incurred in making the motion, including attorney's fees. Fourth, in addition to a spoliation sanction, a court will award a prevailing litigant the reasonable costs associated with the motion plus any investigatory costs into the spoliator's conduct.

*Id.* at 523-24 (citations omitted). Relying on *Goodman*, Defense counsel argued that the award in this case should be limited to the costs and fees incurred in making the motion, the costs of investigating the spoliator's conduct, and discovery costs for any additional discovery that had to be performed "*after* [the] finding that evidence was spoliated." *Id.* at 524 (emphasis added).

However, *Goodman* is factually inapposite because the Court did not find bad faith, *see id.* at 519, and the case did not involve the Court's authority to sanction for contempt. *Metropolitan Opera Ass'n v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 231 (S.D.N.Y. 2003), in which the Court awarded attorney's fees after a finding of bad faith, provides better guidance. There, although the court did not make a finding of contempt, it noted that defense counsel exhibited "utter contempt for their discovery obligations," *id.* at 224, "continuing contempt for the discovery process and their preference for gamesmanship over their obligations as officers of the Court." *Id.* at 202. The court granted the plaintiff's "motion for judgment as to liability against defendants and for additional sanctions in the form of attorneys' fees *necessitated by the discovery abuse* by defendants and their counsel." *Id.* at 231. Thus, the court did not limit the fee recovery to fees arising after the discovery of spoliation. *Id.*

As noted, the scope of recoverable fees and expenses in this case extends to "costs and legal fees allocable to spoliation." *Victor Stanley*, 269 F.R.D. at 539. The Court reiterated this scope in its November 1, 2010 Order, in which it ordered Defendants to pay "Plaintiff's attorney's fees and costs associated with *all discovery that would not have been un[der]taken but for Defendants' spoliation*, as well as the briefings and hearings regarding Plaintiff's Motion for

Sanctions." ECF No. 398. This is because the effects of spoliation are not limited to a party's efforts to discover and to prove the spoliation and its scope. Rather, the willful loss or destruction of relevant evidence taints the entire discovery and motions practice. Therefore, the Court Order clearly stated that Defendants' sanctions encompass all fees associated with "all discovery" efforts that Plaintiff made because of Defendants' spoliation. *See id.* This Court already found that Defendants' first spoliation efforts corresponded with the beginning of litigation. *See Victor Stanley*, 269 F.R.D. at 506 ("An examination of the CPI System Registry conducted during discovery showed 353 user-initiated deletions of files from Mark Pappas's work computer, a password-protected laptop, commencing soon after VSI filed suit, i.e., between October 11, 2006, and November 17, 2006."). Accordingly, I find that Defendants' misconduct affected the entire discovery progress since the commencement of this case. Therefore, Defendants have failed to show that fees and expenses prior to November 14, 2008 or after June 25, 2010 are unrelated to efforts that Plaintiff's counsel undertook as a result of Defendants' spoliation.

Additionally, Defendants rely on this Court's Rules and Guidelines for Determining Attorneys Fees in Certain Cases to contest the rate and nature of fees charged by Hogan Lovells, which, Defendants argue "violate[] the Guidelines." Defs.' Opp'n 4-5. It is true that the Rules and Guidelines include "Mandatory Rules Regarding Billing Format, Time Recordation, and Submission of Quarterly Statements." *See* Loc. R. App'x B, at 1. However, as noted, the sections Defendants cite—Guidelines 2.c, 2.d, 3.b, 3.a, and 3.e—are just that, guidelines, not holy writ. Indeed, the Guidelines themselves state that, in some instances, "[d]eparture . . . would be appropriate" and that they "are intended solely to provide practical guidance." *Id.* nn.4-6. Therefore, I shall consider the circumstances for the different rates charged.

10

### A.  Hourly Rate

At the Law Offices of Randell C. Ogg, three paralegals, a contract attorney named Stephan Shaibani and Mr. Ogg worked on the case.  Ogg Aff. ¶¶ 5-7.  The Law Offices billed Plaintiff $325-50 per hour for Mr. Ogg's work, $50-60 per hour for the paralegals' work, and $250 per hour for Mr. Shaibani's work, Ogg Aff. ¶¶ 5-6, and Defendants do not challenge the rates charged.  Given Mr. Ogg's more than fifteen years of legal experience and Mr. Shaibani's at least five years of legal experience, Ogg Aff. ¶¶ 5-7, I find that the rates that the Law Offices charged are reasonable. *See* Local Rules App'x B, at 3.b, d, e.

At Hogan Lovells, Robert Wolinsky "acted as lead counsel . . . and was assisted primarily by two associates, Amy Collen . . . and Laura Schabinger."  Wolinsky Aff. ¶ 3.  Senior Partner Steven P. Hollman, associates Rebecca Mandel and Michael Kass, and two legal assistants also worked on the case.  *Id.*  As noted, Defendants challenge the rates charged by all Hogan Lovells employees involved in the case, but only on the basis that the rates exceed the Guidelines.  Defs.' Opp'n 4-5. Mr. Wolinsky, who was admitted to the bar approximately nine years ago, Wolinsky Aff. ¶ 4, billed Plaintiff $370-420 per hour. Pl.'s Bill Ex. E.  The Guidelines state that an attorney admitted to the bar for nine years reasonably may bill up to $300 per hour.  Loc. R. App'x B, at 3.c.  However, as noted, a fee outside the Guidelines may be reasonable nonetheless. *See* Loc. R. App'x B n.6.  Mr. Wolinsky stated under oath that "Hogan Lovell's rates . . . fall squarely within the range of rates for similar law firms," and that he charged Plaintiff significantly less than his regular hourly rate.  Wolinsky Aff. ¶¶ 5-6.  He cited two cases from the D.C. Circuit in which Hogan Lovells' rates were deemed reasonable, but admitted that "Hogan Lovells billing rates have increased since the time of the D.C. Circuit's holding," while asserting that the increase was in keeping with rising rates at "comparable law firms."  Mr. Ogg stated that

"[t]he American Intellectual Property Law Association's report of the Economic survey showed that in 2006 the mean average billing for partners in the Washington CMSA (which does not include Baltimore) was $435." Ogg Aff. ¶ 7 n.1; *see Leviton Mfg. Co. v. Universal Sec. Instr., Inc.*, 613 F. Supp 2d 670, 732-33 (D. Md. 2008) (citing report), *vacated on other grounds*, 606 F.3d 1353 (Fed. Cir. 2010). Thus, Mr. Wolinsky's fees were in keeping with "the customary fee." *See Johnson*, 488 F.2d at 718; *Thompson*, 2002 WL 31777631, at *6 n.19. Moreover, the legal services Mr. Wolinsky rendered were in an area of specialization, intellectual property, and the legal issues were nuanced and complex. *See Johnson*, 488 F.2d at 718; *Thompson*, 2002 WL 31777631, at *6 n.19. Given the customary fee for attorneys in the Washington area where Mr. Wolinsky practices, Mr. Wolinsky's experience, and the level of skill he has demonstrated in this case, I find that $370-420 per hour is a reasonable rate for Mr. Wolinksy's time. *See Johnson*, 488 F.2d at 717-19; *Thompson*, 2002 WL 31777631, at *6 n.19.

Mr. Hollman, who also practices in the Washington area and has been admitted to the bar for well over fifteen years, billed Plaintiff $625 per hour. Pl.'s Bill Ex. E. As noted, while the Guidelines state that attorneys admitted to the bar for fifteen or more years reasonably may bill $275-400 per hour, Local Rules App'x B, at 3.d, $435 was a reasonable rate for an intellectual property attorney in the Washington area four years ago, Ogg Aff. ¶ 7 n.1. Although an attorney reasonably may charge in excess of the recommended rates, $625 per hour greatly exceeds $400 per hour. I find that $450 per hour is a reasonable rate for Mr. Hollman's time.

Ms. Collen, Mr. Kass, and Ms. Mandel billed Plaintiff $270 per hour, and Ms. Collen later billed Plaintiff $330 per hour. Pl.'s Bill Ex. E. Ms. Schabinger billed Plaintiff $355 per hour. *Id*. Ms. Collen and Ms. Schabinger both clerked for a federal district judge after graduating from law school, and both have been in practice for less than five years. Wolinsky Aff. ¶ 4C-D.

Mr. Wolinksky does not provide any other evidence regarding their "experience, reputation, [or] ability." *See Johnson*, 488 F.2d at 718; *Thompson*, 2002 WL 31777631, at *6 n.19. Mr. Kass's and Ms. Mandel's backgrounds are not provided. As noted, the Guidelines provide that $190 is a reasonable rate for an attorney admitted to the bar for less than five years. *See* Loc. R. App'x B, at 3.a. The fact that $435 per hour was an average rate for intellectual property attorneys in the Washington area, *see* Ogg Aff. ¶ 7 n.1, suggests that a rate above this Court's Guidelines may be reasonable. I find that $250 per hour is a reasonable rate for Ms. Collen and Ms. Schabinger's time, and $225 per hour is a reasonable rate for Mr. Kass's and Ms. Mandel's time.

The legal assistants billed Plaintiff $240-45 per hour, and Mr. Wolinsky does not provide any information about their skills or expertise. Pl.'s Bill Ex. E. These rates are more than double the recommended maximum of $115 per hour for paralegals and law clerks. *See* Loc. R. App'x B, at 3.e. I find that $115 per hour is a reasonable rate for the paralegals' time.

**B. Hours Expended**

Mr. Ogg worked 1,765.3 hours; Mr. Shaibani worked 15.2 hours; and Mr. Ogg's paralegals worked a total of 322.95 hours. Ex. B at 84 & Ogg Aff. ¶ 11. Mr. Wolinsky worked 455.05 hours; Mr. Hollman worked 18.25 hours; Ms. Collen and Ms. Schabinger worked a total of 217.55 hours; Mr. Kass and Ms. Mandel worked a total of 43.75 hours; and the paralegals at Hogan Lovells worked a total of 30.75 hours. The "time and labor required" to address Defendants' spoliation was commensurate with the magnitude of the spoliation itself and is easily measured by the voluminous filings, depositions, and hearings in this case. *See Victor Stanley*, 269 F.R.D. at 499-500 (noting that Defendants' spoliation and other discovery abuses lasted through four years of discovery and that Plaintiff made "repeated efforts throughout discovery to try to effect preservation of ESI evidence and obtain relevant ESI evidence to

support its claims"; submitted "a succession of requests . . . to obtained discovery that it consistently maintained Defendants had not provided despite numerous Court orders"; filed four motions for sanctions; and appeared before the Court for numerous hearings spanning months); *see also Johnson*, 488 F.2d at 717; *Thompson*, 2002 WL 31777631, at *6 n.19.  Synthesizing and organizing the data in this case, understanding the significance of the spoliated evidence, and addressing the technical aspects of preservation of ESI evidence required skill and experience. *See Johnson*, 488 F.2d at 718-19; *Thompson*, 2002 WL 31777631, at *6 n.19.  Also, it is easily conceivable that such a time commitment as the attorneys made to this case, for which millions of dollars were at stake, would have precluded them from accepting other cases that they otherwise could have taken at higher billing rates.  *See Johnson*, 488 F.2d at 718; *Thompson*, 2002 WL 31777631, at *6 n.19.  Therefore, with the two minor exceptions noted below, I find that the time spent by counsel and their paralegals was reasonable.

One exception is the 1.2 hours of mediation discussions on December 4, 2008, billed by Mr. Ogg at a rate of $350 per hour.  *See* Pl.'s Mot. Ex. B, at 48.  I find the link to Defendants' spoliation attenuated at best, and therefore I will delete $420 from the total award.  The other exception pertains to the hearings that two attorneys attended on behalf of Plaintiff; Defendants challenge these fees.  Considering the complexity of this case and the fact that generally two attorneys represented Defendants at the same hearings, I find that generally it was reasonable for two attorneys to represent Plaintiff at the hearings.  As Plaintiff agrees to deduct the fees charged for Ms. Schabinger's attendance at one hearing for 5.3 hours, Pl.'s Reply 10 n.5, I will reduce the fee award by $250 per hour (the reasonable rate for Ms. Schabinger's time) for 5.3 hours, or $1,325.

Defendants also assert that when Mr. Wolinsky met with Mr. Ogg or a Hogan Lovells attorney, only one attorney should be compensated for the meeting, because Guideline 2.d states that "'[g]enerally, only one lawyer is to be compensated for client, third-party and intra-office conferences,'" and that more than one attorney may be compensated "only where 'justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy and delegation of task.'"   Defs.' Opp'n 5 (quoting Loc. R. App'x B, at 2.d).   A meeting between Mr. Wolinsky and Mr. Ogg, attorneys from different firms both working on the case, is not a meeting with a client or a third party or an intra-office conference. Also, Plaintiff explains that the meetings between Mr. Wolinsky and other Hogan Lovells attorneys were "exactly the type of conferences that the Guidelines contemplate, meetings which allow the people at lower rates to conduct the majority of the work but with appropriate supervision." Pl.'s Reply 11.  Therefore, it is reasonable for each attorney to be compensated in these instances. *See* Loc. R. App'x B, at 2.d. I will not reduce the fee award with regard to hours allocated to these meetings.

Although the hours charged are by and large reasonable, the fees have been adjusted as noted above.  As a result, attorney's fees shall be awarded as follows:

| Attorney/paralegal | Hourly rate found reasonable by the Court | Hours found reasonable by the Court | Fee |
|---|---|---|---|
| Mr. Ogg | $325 | 558.4 | $181,480.00 |
| Mr. Ogg | $350 | 1,205.7 | $421,995.00 |
| Mr. Ogg (fee application time) | $350 | 53.3 | $18,655 |
| Mr. Shaibani | $250 | 15.2 | $3,800.00 |
| Mr. Ogg's paralegals | $50 | 86.25 | $4,312.50 |
| Mr. Ogg's paralegals | $60 | 236.7 | $14,202.00 |
| Mr. Wolinsky | $370 | 265.75 | $98,327.50 |
| Mr. Wolinsky | $420 | 189.3 | $79,506.00 |
| Mr. Wolinsky (fee application time) | $420 | 11 | $4,620.00 |

| | | | |
|---|---|---|---|
| Mr. Hollman | $450 | 18.25 | $8,212.50 |
| Ms. Collen and Ms. Schabinger | $250 | 212.25 | $53,062.50 |
| Mr. Kass and Ms. Mandel | $225 | 43.75 | $9,843.75 |
| Paralegals at Hogan Lovells | $115 | 30.75 | $3,536.25 |
| **TOTAL** | | | **$901,553.00** |

### III.    Costs

Plaintiff also seeks costs in the amount of $148,297.04, which includes expenses billed by Mr. Ogg of $39,353.76, expenses billed by Mr. Wolinsky of $12,974.24, and expenses billed by Guidance Software and Andreas Spruill of $95,969.04.  Pl.'s Bill at 14.  In support, Plaintiff submitted its attorneys' affidavits; the bills Plaintiff received from the Law Offices of Randell C. Ogg and Hogan Lovells US L.L.P. for expenses, Pl.'s Bill Exs. C & F, ECF Nos. 388-3 & 388-6; and the bills Plaintiff received for "consulting, ESI, and forensic services" from Guidance Software, Pl.'s Bill Ex. G, ECF No. 388-7.  The six-page summary of expenses from the Law Offices of Randell C. Ogg shows the month and cost of each expense and provides a brief description of each expense, such as transcripts, travel expenses, research charges, FOIA requests, and subpoena and deposition expenses.  Pl.'s Bill Ex. C.  The two-page summary of expenses from Hogan Lovells shows the date and cost for computer research and transcripts. Pl.'s Bill Ex. F. The invoices from Guidance Software provide the date, the cost, and a description of the services rendered.  Pl.'s Bill Ex. G.  These documents provide ample detail to justify an award of costs, *see Thompson*, 2002 WL 31777631, at *9.  I find that these costs are related to addressing Defendants' spoliation and are reasonable.

With regard to Guidance Software's bills, Defendants argue that the charges for services in 2007 were "unrelated to the later services that had to be performed because of spoliation." Defs.' Opp'n 4. As noted, Defendants began destroying evidence when litigation began.  *See Victor Stanley*, 269 F.R.D. at 506.   Moreover, the evidence they destroyed was ESI, and

Guidance Software, a computer forensic consultant, "was initially hired in November 2006 to address the early evidence of spoliation by Defendants and to prevent further destruction of data." Pl.'s Reply 7 (citing Pl.'s Mot. for Leave to Initiate a Rule 34(a) Request for Production of the Contents of the Hard Drives of Defendants' Computers 2-3, ECF No. 18, in which Plaintiff raised the issue of deleted data and stated that Plaintiff had retained Guidance Software, which could retrieve the deleted data). On these bases, I find that Guidance Software's earlier services, which included "Acquisition/Processing of Non-Privilege Deliverable"; "Discuss case related eDiscovery issues w/ R.Ogg – R. Wolinsky"; and "Preparation of proposed eDiscovery search and collection protocol," *see* Pl.'s Mot. Ex. G, pertained to Defendants' spoliation efforts.

Therefore, costs shall be awarded as follows:

| Billed by | Amount |
|---|---|
| Law Offices of Randell C. Ogg | $39,353.76 |
| Hogan Lovells | $12,974.24 |
| Guidance Software | $95,969.04 |
| **TOTAL** | **$148,297.04** |

Coupled with the total attorney's fee award of $901,553.00, the total fee and costs payment shall be $1,049,850.04.

In sum, it is hereby ORDERED that relief in the form of payment by Defendants of $1,049,850.04 for attorney's fees and costs is GRANTED. Defendants already remitted payment of $337,796.37, and shall remit payment of the balance, $712,053.67, to Plaintiff within thirty (30) days of this Order.

Dated: <u>January 24, 2011</u>                    _____ /S/_____
                                                Paul W. Grimm
                                                United States Magistrate Judge

lyb