IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VICTOR STANLEY, INC.         *

       Plaintiff          *

       vs.               *    CIVIL ACTION NO. MJG-06-2662

CREATIVE PIPE, INC., et al.    *

       Defendants       *

\*     \*     \*     \*     \*     \*     \*     \*     \*

<u>MEMORANDUM AND ORDER RE: SANCTIONS/CONTEMPT</u>

The Court has before it the Certification of Civil Contempt [ECF No. 733] issued by Magistrate Judge Sullivan and the materials submitted relating thereto.

The Court has held a hearing, heard evidence and had the benefit of the arguments of counsel. The Court has made its factual findings set forth herein based on its evaluation of the evidence and the reasonable inferences drawn therefrom.

I. <u>BACKGROUND</u>

Plaintiff Victor Stanley Inc. ("VSI") has, since 1962, been manufacturing and selling site furnishings[1] with a reputation for producing high quality merchandize. Beginning in or about 2004, Defendant Mark Pappas ("Pappas") and his company, Defendant

---

[1] Including such as litter receptacles, benches, tables, chairs, ash urns, planters, tree guards, seats, bike racks, and bollards made from steel, cast ductile iron, wood, and recycled plastic.

Creative Pipe, Inc. ("CPI") competed with VSI, producing and selling similar (sometimes identical) products under the trade name "Fuvista."[2] In 2006, VSI filed the instant law suit, asserting various claims against Pappas and CPI that were ultimately "boiled down" to claims based upon copyright infringement, unfair competition, false advertising, and design patent infringement.

In the course of litigating the instant case, Defendants Pappas and CPI engaged in a massive degree of spoliation of evidence detailed in Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497 (D. Md. 2010). As stated therein:

> Through four years of discovery, during which Defendant Mark Pappas, President of Defendant CPI, had actual knowledge of his duty to preserve relevant information, Defendants delayed their electronically stored information ("ESI") production; deleted, destroyed, and otherwise failed to preserve evidence; and repeatedly misrepresented the completeness of their discovery production to opposing counsel and the Court.

Id. at 499-500.

In the Memorandum, Order and Recommendation [ECF No. 377), then-Magistrate Judge Grimm recommended that Defendants be ordered to pay monetary sanctions equivalent to attorneys' fees and costs caused by Defendants' spoliation. By the Order Re:

---

[2] A name selected by Pappas as standing for "f--- you Victor Stanley."

2

Sanctions Motion [ECF No. 381], the Court adopted the decision, awarding VSI attorneys' fees and costs in an amount to be determined and a default judgment as to liability on the copyright infringement claim. In the Memorandum and Order issued January 24, 2011 [ECF No. 448], then-Magistrate Judge Grimm determined the total due for fees and costs to be $1,049,850.04. On June 24, 2011, the said Memorandum and Order was adopted as the decision of the Court. Memorandum and Order Re: Sanction Award, ECF No. 476.

On February 24, 2011, the Court completed a six-day bench trial on Plaintiff's claims. On September 30, 2011, the Court issued the Memorandum of Decision [ECF No. 480], awarding VSI damages totaling $2,454,931.10 with judgment interest and costs. The Amended and Final Judgment Order [ECF No. 488] was issued November 4, 2011. On December 30, 2013, the Court issued the Order Re: Attorney Fees [ECF No. 665] awarding VSI $748,334.72 of legal fees and expenses to be paid by Defendants Pappas and VSI that were included in the Supplemental Judgment Order [ECF No. 666]. Hence, the total of damages, costs, legal fees, and sanctions to which Defendants have been held liable to VSI is in excess of $4,000,000.00.

Defendants did not proceed in good faith in regard to their obligations to VSI. They failed to make the required payments,

or any payments at all, and proceeded to take actions to obstruct the ability of VSI to effect collection of the judgment obligations. Their actions led to the issuance of a warrant to arrest Pappas [ECF No. 521] from which Pappas fled to Belize. Pappas was arrested in Belize by Belizean police and was returned to the United States on August 6, 2012. He was then taken into custody in Houston, Texas by the United States Marshal and brought to the District of Maryland to show cause why he and CPI should not be held in contempt for failure to comply with Court Orders.

On August 17, 2012, Pappas was released from custody by this Court subject to conditions that included a schedule for Defendants to make certain payments. Order Releasing Mark T. Pappas With Conditions [ECF No. 563]. Defendants Pappas and CPI did not comply with the conditions and, on December 19, 2013, were held liable for a further award of attorneys' fees by virtue of their actions to avoid payment to VSI of the sanctions award. See Order Re: Attorney Fees Related to Violations of Sanctions [ECF No. 664].

The underlying motions upon which the currently-alleged contempt is based relate to discovery and payment obligations. These are:

(1) The February 8, 2012 Order [ECF No. 538] issued by then-Magistrate Judge Grimm[3] requiring Defendants to produce "all responsive documents in their possession, custody or control" in connection with VSI's First Request for Production of Documents to CPI, and to "answer all interrogatories completely and not evasively,"

(2) The November 20, 2014 Order [ECF No. 686] issued by Magistrate Judge Sullivan requiring Defendants to produce "full and complete answers to all of the interrogatories propounded in [VSI's] Third Request for Production of Documents," and

(3) The April 20, 2016 Order [ECF No. 722] of Magistrate Judge Sullivan requiring Plaintiffs to pay Plaintiff $1,281,315.91 by May 23, 2016.

Because Defendants had not complied with the first two of these Orders, on February 23, 2015, VSI filed a Motion for Sanctions and Finding of Contempt for Failure to Comply With the Court's Orders of February 8, 2012 and November 20, 2014 [ECF No. 687].

On April 20, 2016, Magistrate Judge Sullivan issued his Memorandum Opinion [ECF No. 721] regarding Defendants' failure to comply and the harm caused to VSI as a result of the compliance failures. Magistrate Judge Sullivan held that Defendants had failed to comply with the Orders at issue in several respects and found that monetary sanctions of $1,232.993.97, and an award of costs of $48,321.94, was appropriate. Memorandum Opinion [ECF No. 721] at 27. The

---

[3] Now, a United States District Judge in the District of Maryland

Magistrate Judge required the total of $1,281,315.91 to be paid by May 23, 2016 and certified as paid by a status report filed by May 31, 2016. Id. at 28. The Magistrate Judge stated: "If the parties report that Defendants have failed to make the required payment in full, the Court will certify this fact to the district judge in this case for a civil contempt inquiry pursuant to 28 U.S.C. § 636(e)(6)(B)(iii)." Id.

In a joint status report filed May 23, 2016 [ECF No. 728], the parties stated that the payments had not been paid and that the Defendants intended to appeal the Order imposing the payment obligation [ECF No. 721]. Defendants did not, however, file an appeal from the Order of April 20, 2016.

On May 24, 2016, VSI filed Plaintiff's Request For Certification [ECF No. 729] requesting the Magistrate Judge to certify to the district judge that the Defendants had committed various acts that constitute civil contempt. See 28 U.S.C. § 636(e)(6)(B)(iii).

On July 11, 2016, Magistrate Judge Sullivan issued the Certification of Civil Contempt [ECF No. 733], stating:

> the undersigned finds that civil contempt proceedings are warranted, and respectfully recommends that Defendants be directed to appear on a date certain before the Honorable Marvin J. Garbis, Senior United States District Judge, to show cause why they should not be found in contempt of Court for failing to comply with this

> Court's orders of February 8, 2012, November
> 20, 2014, and April 20, 2016.

Id. at 3.

On December 20, 2016, the district court issued the Show Cause Order [ECF No. 736] stating:

> The Court finds, based upon to [sic]
> the Certification of Civil Contempt [ECF No.
> 733], that contempt proceedings are
> warranted. Therefore, Defendants shall show
> cause why they should not be found in
> contempt of Court for failing to comply with
> this Court's Orders of February 8, 2012
> [discovery] and November 20, 2014
> [discovery], and April 20, 2016 [payment].

Id. at 1.

The Show Cause Hearing was held on January 17, 2017, at which Pappas appeared, represented by counsel, and testified. Defendant CPI did not appear, but Pappas' counsel represented that the corporation no longer existed. Tr.[4] 2.

## II. DISCUSSION

A contempt proceeding may be civil and/or criminal in nature. United States v. Darwin Constr. Co., 873 F.2d 750, 753-54 (4th Cir. 1989). Civil contempt is used to address continuing disobedience and to coerce obedience. Id. Criminal contempt is used to punish the past disobedience of a court

---

[4] Tr. is used herein to refer to the transcript of the morning session of the show cause hearing held January 17, 2017 [ECF No. 746].

order.  Id.  The instant proceeding pertains to a finding of civil contempt.  However, the Defendants' pattern of disregard and noncompliance with the Court's Orders is of considerable concern.  Defendants must be aware that continued contemptuous conduct could lead to criminal contempt proceedings.

The instant contempt proceeding is based upon Defendants' noncompliance with their discovery obligations imposed by the Orders of February 8, 2012 and November 20, 2014, and their payment obligation imposed by the Order of April 20, 2016.  The Court finds that the evidence of record clearly and convincingly establishes Defendants' failure to comply with the Orders at issue and make it appropriate for the Court to utilize its contempt powers to compel compliance.

As noted, the underlying Orders at issue established for Defendants certain discovery obligations [ECF Nos. 538 & 686] and the obligation to pay $1,281,315.91 to Plaintiff by May 23, 2016 [ECF No. 722].

In order for a party to be held in civil contempt, four elements must be established by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such

>     violations; and (4) that [the] movant
>     suffered harm as a result.

In re Grand Jury Subpoena (T-112), 597 F.3d 189, 202 (4th Cir. 2010)(quoting Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000)(citation omitted)). These elements have been clearly and convincingly established by the evidence of record.

The underlying Orders at issue - Documents 538, 686, and 722 - were issued by Magistrate Judges and were not subjected to review by the district judge by Defendants. Defendants do not deny that they had knowledge of the Orders.

Defendants deny that they failed to comply with certain of the discovery obligations imposed and have produced some evidence to dispute Magistrate Judge Sullivan's findings of noncompliance. Defendants do not deny that they failed to make any payment but contend that they were, and are, unable to make any payment at all.[5]

### A. Discovery Obligations

As to the discovery obligations, Defendants contend that to find that there was noncompliance with the Orders, the Court

---

[5] THE COURT: You want -- your evidence is going to be, one, in terms of there should have been zero sanctions; and, secondly, your position is neither CPI nor your client can pay anything. Okay.
MR. SELBA: Yes, Your Honor.
Tr. 20.

must make a de novo redetermination of Magistrate Judge Sullivan's findings and determinations.  That is, in lieu of the type of review that would have been conducted had there been a proper and timely objection or appeal made to the district court, in the instant contempt context, a de novo proceeding is necessary.  Defendants do not present authority supporting their contention.  Nor does the Court find the proposition a sound one.  The Court has, nevertheless, undertaken a review of Magistrate Judge Sullivan's discovery-related findings as if there had been a valid timely objection made by Defendants.  Moreover, since Defendants took advantage of the Court's grant of the ability to present evidence regarding the discovery failures, the Court has considered that evidence as it would in a de novo proceeding.

  The Court finds – by review of Magistrate Judge Sullivan's findings and independently based upon the evidence of record - that Defendants have not complied fully with their discovery obligations and have acted knowingly in this regard with the purpose of evading VSI's attempts to gather information enabling it to effect collection.

  Defendants have "rearranged" CPI's business operations so as to render it not practically feasible for VSI to proceed with collection objectives.  For example, CPI provided its

significant ongoing business assets, including the residual benefits of continuity flowing from past sales, to Pappas' wife without documentation or compensation. This was done by having Pappas' wife form a corporation with the name "SCH"[6] that proceeded to function essentially as did CPI with regard to CPI's body of former customers. CPI's records thus appeared to show transactions with the unrelated SCH. Also, under the new arrangements, sales that would have been made by CPI were made by SCH, so that the sales receivables were not on CPI's records as of the date of the sale, and only a "commission" was shown as due to CPI. The commission appears on CPI's records as due only after the sale was consummated, a date too close to the date of payment by SCH to enable VSI to effect collection of the "commission" payable to CPI before payment was made.

Pappas presented evidence that it may have been possible for VSI to have extracted relevant data from what was actually produced. The Court does not find successful Pappas' effort to effectively shift the blame to VSI for the discovery shortfall. The Court finds that Pappas could have, and should have, conducted the CPI business, and reported financial data related

---

[6] The name that was identical to the name of a corporation owned by a friend, Stephen C. Hair, that had previously done business with CPI. Tr. 74.

thereto, in a manner that would have fairly and adequately informed VSI. Pappas did not do this.

The Court, while agreeing with Magistrate Judge Sullivan regarding Defendants' discovery noncompliance, will not, on the current record, hold Defendants in contempt with respect to the discovery underlying Orders. The Court finds that the payment Order noncompliance is more significant and far more subject to judicial reformation.

B. Payment Obligations

There is no doubt that Magistrate Judge Sullivan's Order requiring Defendants to make a March 23, 2016 payment of $1,281,315.91 [ECF No. 722] existed and was not complied with. Defendants have unjustifiably made no payment at all in compliance with the said Order.

The Supreme Court has explained, that "[i]n a civil contempt proceeding . . . , a defendant may assert a present inability to comply with the order in question." United States v. Rylander, 460 U.S. 752, 757 (1983). If compliance with an order is not possible, contempt is inappropriate. Id. "It is settled, however, that in raising this defense, the defendant has a burden of production." Id. The current state of the record does not prove clearly and convincingly that Defendants

are, or were, able to make full payment of their million dollar plus payment obligation.  However, the Court finds the record to establish by clear and convincing evidence that Defendants were able to make, and presently are able to make, at least partial payment of the obligation.

A district court is given "wide latitude in determining whether there has been a contemptuous defense of its order." <u>Stone v. City and Cty. of San Francisco</u>, 968 F.2d 850, 856 (9th Cir. 1992) (citation omitted).  The standard for finding noncompliance with an Order as contempt has been stated as determining "whether the defendants have performed all reasonable steps within their power to insure compliance with the court's orders." <u>Id.</u>  That rule is consistent with the views of the United States Court of Appeals for the Fourth Circuit. <u>See</u> <u>United States v. Darwin Constr. Co.</u>, 873 F.2d 750, 755 (4th Cir. 1989)("Substantial compliance is found where all reasonable steps have been taken to ensure compliance: inadvertent omissions are excused only if such steps were taken."(citation omitted)).

The Court, having considered the evidence – including particularly the testimony of Defendant Pappas – finds established by clear and convincing evidence that he (and Defendant CPI that he controls) have not performed all

reasonable steps to ensure payment but, rather, have taken – and continue to take – steps to evade any compliance at all with their payment obligation.  These steps have included the arrangement of their affairs, and their inadequate compliance with discovery obligations, to impede VSI's efforts to effect collection of portions of the amount due.

### C. Contempt

As discussed herein, the Court finds that the evidence clearly and convincingly establishes that Defendants failed to comply with their obligation to pay VSI pursuant to Magistrate Judge Sullivan's Order of April 20, 2016 [ECF No. 722].  They most certainly did not take all reasonable steps within their power to ensure at least partial compliance.  They were, and are, therefore, in contempt and subject to possible sanctions. In the context of the instant case, the Court may, should, and shall impose obligations upon Defendants to take specific steps to purge the nonpayment contempt.

The Court finds it appropriate to require Pappas promptly to take actions to make such payments to VSI to satisfy the payment Order as are now possible.  The Court shall, herein, specify particular actions based on the current record and allow

14

Plaintiff to present further evidence and request the Court to require further specific actions.

Pappas has testified that he is currently receiving $7,400.00 per month of rent paid by SCH. That rent may now be paid directly to a creditor of Pappas, but there is no reason shown why the payment cannot, and should not, be paid directly to VSI.

Pappas owns 75% of an entity that owns the property in Salem, Oregon, as to which the aforesaid rent is paid. There appears no valid reason why Pappas should not promptly transfer this asset – 75% ownership of the entity owning the building – to VSI.

Pappas owns certain real estate in Belize.[7] His testimony indicates that some Belize properties are owned by him solely, and some are owned jointly by Pappas and his wife.[8] There is no reason shown why any Pappas ownership interests in Belizean property cannot, and should not, now be transferred to VSI.

Pappas has testified that he owns certain inventory that was CPI's that he refers to as having a value of some $5,000.00 to $15,000.00.[9] There is no reason why Pappas should not be

---

[7] That he claims may have zero value. Tr. 48.
[8] See Tr. 35-37.
[9] THE COURT: What's this inventory that you own that you're being paid for?

15

required to identify this inventory with specificity so that VSI can seek an appropriate Order and try to obtain some value from the property.

In sum, Defendants have failed to adequately demonstrate the financial inability to comply, at least in part, with the Court's payment Order. Pappas' claimed inability to pay is insufficient. See, e.g., S.E.C. v. Bilzerian, 112 F. Supp. 2d 12, 17 (D.D.C. 2000) ("Bilzerian cannot avoid a finding of contempt merely by showing that he is unable to pay the entire $62 million judgment at this time. Inability to comply is only a complete defense if he cannot pay any of the judgment; otherwise, he must pay what he can."); Loftus v. Se. Pennsylvania Transp. Auth., 8 F. Supp. 2d 464, 469 (E.D. Pa. 1998)("[U]nless a party is completely unable to comply with the Court's Order's due to poverty, he must comply to the extent that his finances allow him.").

---

PAPPAS: There was inventory of Creative Pipe that was at the warehouse, most of which has either been disposed of because it wasn't selling or else there have been -- there were bicycle racks, some umbrellas, this sort of thing that when I dissolved Creative Pipe became my property. And SCH over the past couple years has sold some of that stuff. And as they sell it, they pay me personally for it.
THE COURT: So how much is left?
PAPPAS: Oh, I -- probably neighborhood of 5 to 10 thousand dollars' worth of product.
Tr. 29-30.

III. CONCLUSION:

For the reasons set forth herein:

1. The Court finds proven, by clear and convincing evidence, that Defendants have failed to comply with the Magistrate Judge's April 20, 2016 Order [ECF No. 722] requiring Defendants to pay Plaintiff $1,281,315.91 by May 23, 2016, and holds both Defendants in contempt of Court for failure to comply with the payment obligation.

2. Defendants shall promptly commence compliance with the payment Order by taking the following actions:

    a. By September 30, 2017, and in each month thereafter, Pappas shall arrange to have VSI paid the rent of $7,400.00, the amount of rent for the Salem, Oregon property.

    b. By September 30, 2017, Pappas shall execute a document, to be presented by VSI, that effects the transfer to VSI of all of Pappas' current ownership interest in the Salem, Oregon property, and Pappas shall provide VSI with a reasonable estimate of the fair market value of the interest transferred.

    c. By September 30, 2017, Pappas shall execute a document, to be presented by VSI, that effects the transfer to VSI of all of Pappas' current ownership of any interests in Belizian properties, and Pappas shall provide VSI with a reasonable estimate of the fair market value of the interests transferred.

3. Should Defendants contend that compliance with this Order would result in a total overpayment of the $1,281,315.91 due by virtue of the April 20, 2016 Order, it may seek modification of the Order but shall not delay making any transfers or payments required herein except as may be permitted by further Order.

4.  By September 22, 2017, Plaintiff shall file a report regarding the status to date of Defendants' compliance with this Order.

5.  Should Defendants not fully comply with this Order, they shall appear in Courtroom 5C of the United States Courthouse, Baltimore, Maryland on October 2, 2017 and show cause why the Court should not issue a warrant requiring the immediate arrest of Defendant Pappas until compliance is achieved.

SO ORDERED, on <u>Monday, August 14, 2017</u>.

<u>        /s/        </u><br>
Marvin J. Garbis<br>
United States District Judge