IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VICTOR STANLEY, INC., | * | |
| Plaintiff, | * | |
| v. | * | Case No. MJG-06-2662 |
| CREATIVE PIPE, INC., *et al.* | * | |
| Defendants. | * | |

* * * * * *

# REPORT AND RECOMMENDATION

This Report and Recommendation is submitted in connection with Item 2 of the Court's Procedural Order of October 2, 2017 (ECF No. 758), which directed the undersigned to

> conduct any necessary proceedings and provide a Report and Recommendation regarding the request by Plaintiff for the Court to order Pappas to address his payment shortfall by taking specific actions, including making payments from his income, liquidation of assets, and recovery of the various transfers he made to his wife.

(*Id.* at 2.) A hearing on this referral was held on April 4, 2018. (ECF No. 815.)

## I. Procedural Background

The Court has previously summarized the lengthy procedural history of this case. (ECF No. 747 at 1-7.) Of import here, on April 20, 2016, the Court ordered Defendant-judgment debtors Mark Pappas ("Pappas") and Creative Pipe, Inc. ("CPI") (collectively, "Defendants") to pay a total of $1,281,315.91 in monetary sanctions and costs to Plaintiff-judgment creditor Victor Stanley, Inc. ("VSI") by May 23, 2016, and certify that such amount had been paid by May 31, 2016 (hereinafter, the "Sanctions Order"). Defendants did not comply with the Sanctions Order. In connection with Defendants' violation of the Sanctions Order, I entered a

Certification of Civil Contempt. (ECF No. 733.) The presiding judge issued a Show Cause Order (ECF No. 736) and a Show Cause Hearing was held on January 17, 2017 (ECF No. 737). At the hearing, Defendants "[did] not deny that they failed to make any payment [on the Sanctions Order] but contend[ed] that they were, and are, unable to make any payment at all." (ECF No. 747 at 9.)

The Court issued a Memorandum and Order Re: Sanctions/Contempt on August 15, 2017 (ECF No. 747). In that Memorandum, the Court found that Defendants had "not performed all reasonable steps to ensure payment [on the Sanctions Order] but, rather, have taken – and continue to take – steps to evade any compliance at all with their payment obligation." (*Id.* at 14.) The Court found Defendants "in contempt and subject to possible sanctions" because of their failure to "take all reasonable steps within their power to ensure at least partial compliance" with the Sanctions Order. (*Id.*)

In an effort to force Defendants to comply with and make payment on the Sanctions Order, the Court ordered Pappas to take a number of specific actions, including transferring to VSI the $7,400.00 monthly rent payments that he received, and transferring to VSI all of his ownership interests in real estate in Salem, Oregon, and in Belize. (*Id.* at 17-18.)

After the Court's Memorandum and Order of August 15, 2017, VSI informed the Court that it suspected "that the only net funds from the transfers ordered . . . will be from the sale of the Salem Property." (ECF No. 751 at 5.) As a result, VSI expected there to be an $800,000 shortfall in what Defendants owe under the Sanctions Order. (*Id.*) VSI requested that the Court "order Pappas to address this shortfall by making payments from his considerable income, liquidation of other assets, and recovery of the various fraudulent transfers he made to his wife."

2

(*Id.*) The Court looked favorably on VSI's request and referred the matter to me for this Report and Recommendation. (ECF No. 758 at 2.)

## II.     Legal Standard

Courts have broad discretion to fashion an appropriate remedy following a finding of civil contempt. *See S.E.C. v. SBM Inv. Certificates, Inc.*, No. DKC-06-0866, 2012 WL 706999, at *13 (D. Md. Mar. 2, 2012) (citing *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995)). Courts are constrained, however, to "use the least possible power adequate to the end proposed." *Id.* "The purpose of any sanction imposed must be wholly remedial and intended to coerce the party's compliance with a court order or to compensate for damage from the contemnor's non-compliance; it cannot be punitive." *Id.*[1]

## III.    Analysis

The Court has already found Defendants to be in contempt for their failure to "take all reasonable steps within their power to ensure at least partial compliance" with the Sanctions Order. (ECF No. 747 at 14.) VSI and Defendants each propose different remedies to purge Defendants of their contempt and to coerce compliance with the Sanctions Order and other orders of this Court. VSI requests that Defendants "be ordered to make the following[] transfers/payments to VSI as part of a purge provision to address their ongoing contempt of court:"

> 1. Pappas, Creative Pipe, Inc. (CPI) and SCH individually and jointly shall transfer and assign all their rights to any and all of the following intellectual property [of] Pappas, CPI or SCH in the form of papers prepared by VSI:

---

[1] At the hearing, VSI submitted a list of principal cases upon which it relied. (*See* "Citations to Principal Cases Relied Upon By Plaintiff," attached to this Report and Recommendation as received by the Court during the hearing held on April 4, 2018.) These cases are most relevant to the issue of whether Defendants are in contempt of the Court's Sanctions Order, which has already been resolved by the presiding judge. (*See* ECF No. 747.)

3

      a. all site furnishing patents owned by Pappas, CPI or SCH, including those patents identified by Pappas in his response to the Post Hearing Order of February 28, 2018 (ECF No. 811);
      b. all copyrights to the names of the products used by CPI and SCH, including the product names for the products that appeared in either the CPI or SCH on-line catalog; and
      c. the right to use the name "Creative Pipe, Inc." in connection with the sale and marketing of site furnishing products; and
      d. the rights to all Product Designs, Names, and Product Designations that were previously supplied and marketed by CPI; and
      e. the bank accounts and physical assets of Torcoat, LLC.
2. Pappas and SCH shall provide to VSI copies of all shop drawings for any product covered in paragraph 1 above and shall assign to VSl the exclusive rights to use of any such drawings;
3. Pappas and SCH shall assign to VSI all SCH accounts receivable identified by Pappas in his response to the Post Hearing Order of February 28, 2018 (ECF No. 811) and any accounts receivable that have come in to existence since the date of that response.
4. The Inventory, SCH Banking Account, Air Compressor, Fork Lift, Sand Blasting Booth, Powder Coating Booth, Powder Coating Oven, Packaging Materials, Tools and Equipment, Pallet Racking, and Electronic Equipment identified by Pappas in his response to the Post Hearing Order of February 28, 2018 (ECF No. 811 ).
5. Pappas shall make an immediate cash payment of $100,000 to VSI; and
6. Pappas shall allow VSI monthly access to the full books and records of SCH, including the QuickBooks or other electronically stored accounting data actually used by SCH for the conduct of its business.

(*See* "Plaintiff's Requested Transfers," attached to this Report and Recommendation as received by the Court during the hearing held on April 4, 2018.)

Prior to the hearing, Defendants proposed three options to satisfy the remaining balance due on the Sanctions Order. (ECF No. 805.) By the time of the hearing, only one of these options, a monthly payment to VSI of $10,000, remained. By VSI's estimation during the hearing, it will take Defendants more than six years to finish paying the Sanctions Order if they are only required to pay $10,000 per month. For the reasons set forth below, I recommend that the Court adopt VSI's proposed relief and order Defendants to make the transfers and payment immediately.

### A. Defendants' Exhibits

Although Defendants were represented by counsel during the April 4, 2018, hearing, Pappas failed to appear personally. Through counsel, Defendants submitted 17 exhibits. (*See* ECF No. 817.) A brief summary of these exhibits is provided below.

Defendants' Exhibits 1, 2, and 3 are related to an issue that arose when SCH Enterprises, LLC's ("SCH") financial records were converted from the QuickBooks Online format (as the data was produced by SCH) to the QuickBooks Desktop format (as the data was viewed by VSI).[2] These exhibits were submitted to explain a discrepancy that occurred when financial records were converted between the two QuickBooks formats. However, in light of the agreement of the parties at the hearing, they are not relevant to the Court's present inquiry.

Defendants' Exhibit 4 is SCH's balance sheet as of March 20, 2018. It lists $51,410.16 in a Wells Fargo bank account and $123,813.03 in accounts receivable. The judgment entered against Defendants is not listed on the balance sheet. Defendants' Exhibit 5 is SCH's profit and loss report for the period of January 1, 2018, through March 22, 2018. It indicates a gross profit for the time period of $320,394.12 and a net income of $88,974.15. Exhibit 6 is a list of assets owned by Defendants with Pappas's estimate of the value of the assets. The accounts receivable listed in this exhibit is $216,481.00. Other significant assets listed are SCH's inventory ($39,512.20) and SCH's banking account ($68,035.30). The personal assets of Pappas that are listed do not have significant value because of the interests of secured creditors in the assets.

---

[2] On December 14, 2017, VSI filed a motion for substitution of party (ECF No. 762). In this motion, VSI argued that SCH should be substituted for CPI because it was nothing more than a restructured version of CPI. On February 27, 2018, with the consent of SCH and Pappas, the Court granted VSI's motion for substitution of party. (ECF No. 808.) By separate order, the Court entered an amended judgment against SCH and Pappas. (ECF No. 809.)

Exhibit 7 is an annotated printout of search results from a Google Patents Advanced Search for patents that list Pappas as the inventor or assignee.

Defendants' Exhibit 8 is an affidavit signed by Jeannette Lee Torres ("Ms. Torres"), Pappas's former wife. In the affidavit, Ms. Torres states that she earns a salary of $6,666.00 per month before taxes and withholdings, and that if SCH is sold (either to VSI or on the open market) "at a mutually agreed upon price" between SCH and VSI, she will rescind the employment agreement that she entered into with SCH. Defendants' Exhibit 9 is an affidavit signed by Pappas. The affidavit states that he earns a salary of $12,500.00 per month before taxes and withholdings, and that there are no other employment agreements similar to the one in place with Ms. Torres with any other employees of SCH.

Defendants' Exhibit 10 is an aging summary of SCH's accounts payable as of March 22, 2018. Defendants' Exhibit 11 is an aging summary of SCH's accounts receivable as of March 22, 2018.

Defendants' Exhibit 12 is a chart summarizing SCH's financial obligations, which total $1,047,119.08. The lease agreement for the property in Salem, Oregon, and the employment agreement with Ms. Torres comprise the bulk of SCH's obligations. The exhibit expressly excludes VSI's judgment against Defendants.

Defendants' Exhibit 13 is a list of Pappas's fixed monthly expenses. Pappas did not include his monthly expenses for groceries, clothing, and other variable expenses in his list of fixed monthly expenses. Pappas does note that his oldest son now lives with him full-time, which increases the cost of his monthly grocery spending. When his fixed monthly expenses are subtracted from his stated monthly income, Pappas asserts that he is left with about $3,500.00.

Defendants' Exhibit 14 is a notice of entry of this Court's Amended Judgment Order (ECF No. 809) in the Circuit Court for Wayne County, Michigan.

Defendants' Exhibit 15 is an excerpt from the deposition of Ms. Torres. Ms. Torres testified during her deposition about a number of topics, including the employment agreement she reached with Pappas in connection with SCH, and her work with TorCoat, LLC.[3]

Defendants' Exhibits 16 and 17 relate to the problems that occur when data is converted from the QuickBooks Online format to the QuickBooks Desktop format. These exhibits are not relevant to the Court's present inquiry.

**B.      VSI's Exhibits**

VSI's Exhibits 1, 2, 3, and 4 are excerpts from the depositions of Pappas and Ms. Torres. Exhibit 1, from September 18, 2015, covers the founding of SCH, how it operates, and touches upon its potential tax liabilities. Exhibit 2 is an excerpt from Pappas's November 17, 2016, deposition during which he detailed his co-ownership of CPI with his previous ex-wife, Stephanie. Exhibit 3, from Pappas's deposition on January 22, 2018, covers SCH's operations, CPI's unpaid obligations, potential tax liabilities, and the payment of Pappas's expenses by SCH. Exhibit 4 is an excerpt from the February 15, 2018, deposition of Ms. Torres. It addresses SCH's payments to Robert Greer.

VSI's Exhibit 5 summarizes the payments that SCH made to Pappas or Ms. Torres in 2015, 2016, and 2017. According to this summary, in 2016 Pappas received nearly $400,000.00 from SCH in the form of consulting fees, rental fees for Pappas's home office and the Salem, Oregon property, and commissions. In addition, Ms. Torres received a salary of $212,083.30 and

---

[3] At the April 4, 2018, hearing, VSI argued that TorCoat was established as a powder coating company, but that it functioned to move money out of CPI or SCH. TorCoat was used to divert approximately $90,000 per year to Ms. Torres. VSI believes that TorCoat is now part of SCH, or that it is at least controlled by Pappas.

a distribution of $47,626.00 in for 2016. In total, Pappas and Ms. Torres received more than $650,000.00 from SCH in 2016. In 2017, Pappas and Ms. Torres received over $450,000.00.

VSI's Exhibit 6 summarizes examples of Pappas's personal expenses that have been paid by SCH, including a car payment of nearly $2,000.00 per month, expenses for housekeepers, a gardener, and a pool cleaner, utility bills, property tax bills, and Pappas's obligations to Robert Greer. VSI's Exhibits 7 and 8 include sample invoices, receipts, and cancelled checks for these expenses.

VSI's Exhibit 9 contains three profit and loss statements for SCH for various time periods. VSI's Exhibit 10 is SCH's balance sheet as of January 31, 2018. VSI's Exhibit 11 (not discussed during the hearing) is a screenshot showing recent payments and deposits by SCH. VSI's Exhibit 12 (not discussed during the hearing) contains profit and loss statements for SCH for various time periods. VSI's Exhibit 13 purports to show certain anomalies in SCH's tax returns. VSI's Exhibit 14 shows distributions made by SCH in 2016 and 2017 to Jeanette Pappas (Ms. Torres) and to Grand Payment Services, the payee on Pappas's mortgages in Belize. These distributions are substantial, totaling more than $150,000.00. VSI's Exhibit 15 is the promissory note for the real estate in Belize.

VSI's Exhibits 16, 17, 18, and 21 are transaction reports for Pappas's American Express accounts. VSI's Exhibits 19 and 20 are portions of Pappas's 2016 tax returns. VSI's Exhibit 22 is the December 27, 2010, Rebuttal Report of Jeffrey D. Barsky. This report addresses, among other things, certain anomalies in CPI's accounting practices.

VSI's Exhibit 23 is the document assigning to Pappas complete membership interests in SCH. It is dated January 8, 2018. VSI's Exhibit 24 is the employment agreement between SCH and Jeanette Pappas (Ms. Torres). VSI's Exhibit 25 is a December 2017 email chain in which

Pappas instructed a Chinese company to cease and desist from manufacturing orders for SCH. This email chain preceded formal Pappas's ownership of SCH. VSI's Exhibit 26 is a cease and desist letter from Pappas to Jeanette Pappas (Ms. Torres) dated November 29, 2017. This letter also preceded Pappas's formal ownership of SCH.

VSI's Exhibit 27 is a January 2018 letter to Pappas from U.S. Bank concerning a loan that Pappas took out on his Audi S8. Pappas's monthly payment on the vehicle is approximately $700.00. This is a lower monthly payment than Pappas had previously been paying. As reflected in VSI's Exhibit 7, Pappas previously paid approximately $2,000.00 per month on his automobile lease, in addition to substantial insurance costs.

VSI's Exhibit 28 is a sales contract for a vehicle that Pappas bought for his son in January 2016.

VSI's Exhibit 29 contains pages from Pappas's bank statements for the Bank of Southern California. VSI argues that these pages suggest that there is another American Express account controlled by Pappas for which information has not been provided to VSI.

VSI's Exhibit 30 (not discussed during the hearing) is a comparison of key profit and loss items on two sets of QuickBooks data for SCH.

VSI's Exhibit 31 is a transaction detail report for TorCoat for the period of March 1, 2015, through March 26, 2018. VSI argues that the report demonstrates that TorCoat was used to move money out of CPI or SCH for personal expenses of Pappas and Ms. Torres.

VSI's Exhibit 32 contains balance sheets for SCH for the days of December 30 and December 31 in 2015, 2016, and 2017. The balance sheets reflect significant customer deposits made as of December 31 for each year. VSI argues that these deposits are an accounting ploy.

C. **Recommendation**

Pappas did not attend the hearing of April 4, 2018, and never even attempted to explain his decision not to attend. Pappas's absence at the hearing prevented the Court, VSI, and even his own counsel from questioning him about his current financial situation. His non-appearance also prevented the Court and VSI from asking him about serious inconsistencies in the documents produced to VSI, and for an explanation as to why he has not made a single voluntary payment to VSI even though the Court previously ordered him to pay VSI more than $1 million in April 2016.

Make no mistake, even if Pappas had attended the hearing, the Court would certainly abuse its discretion if it deemed any of his testimony to be substantially credible as to any material issue. The Court has found on numerous occasions that Pappas is not credible and that his testimony cannot be trusted. Pappas has consistently misled the Court and VSI. Pappas has also structured his personal and business finances to obstruct VSI's efforts to collect on its judgment. He has methodically and with great calculation thwarted and ignored this Court's orders. Because Pappas did not appear at the hearing and because he generally lacks credibility, the Court will view the documents that he produced to his attorney and to VSI with the suspicion that they deserve. It is clear to the Court, given Pappas's history of misrepresentations and telling half-truths, that these documents likely reveal only part of the story behind Pappas's financial situation.

1. **Transfer and Assignment of Property**

VSI requests that Defendants be ordered to

> individually and jointly . . . transfer and assign all their rights to any and all of the following intellectual property [of] Pappas, CPI or SCH in the form of papers prepared by VSI:

> a. all site furnishing patents owned by Pappas, CPI or SCH, including those patents identified by Pappas in his response to the Post Hearing Order of February 28, 2018 (ECF No. 811);
> b. all copyrights to the names of the products used by CPI and SCH, including the product names for the products that appeared in either the CPI or SCH on-line catalog; and
> c. the right to use the name "Creative Pipe, Inc." in connection with the sale and marketing of site furnishing products; and
> d. the rights to all Product Designs, Names, and Product Designations that were previously supplied and marketed by CPI; and
> e. the bank accounts and physical assets of Torcoat, LLC.

VSI further requests that the Court order Defendants to

> provide to VSI copies of all shop drawings for any product covered in paragraph 1 above and . . . assign to VSl the exclusive rights to use of any such drawings.

I recommend that the Court order Defendants to make the requested assignments and transfers, and to produce copies of the requested shop drawings by a date certain. The transfers and assignments should be completed in consultation with VSI and "in the form of papers prepared by VSI." During the hearing, VSI acknowledged the difficulty of assigning a value to some of these assets, including Defendants' patents and other intellectual property rights. I recommend that the Court order VSI and Defendants to confer in an attempt to assign a value to these assets and apply this value to reduce the balance due on the Sanctions Order. If the parties are unable to agree on a value for the assets, I recommend that the parties be referred back to me for a determination on the issue, with the burden resting on Pappas to prove the value of the assets by competent and reliable evidence.

### 2. Transfer of Accounts Receivable and Assignment of Assets

VSI requests that Defendants

> assign to VSI all SCH accounts receivable identified by Pappas in his response to the Post Hearing Order of February 28, 2018 (ECF No. 811) and any accounts receivable that have come in to existence since the date of that response.

VSI further requests that Defendants assign to VSI the

Inventory, SCH Banking Account, Air Compressor, Fork Lift, Sand Blasting Booth, Powder Coating Booth, Powder Coating Oven, Packaging Materials, Tools and Equipment, Pallet Racking, and Electronic Equipment identified by Pappas in his response to the Post Hearing Order of February 28, 2018 (ECF No. 811).

I recommend that Defendants be directed to assign to VSI all SCH accounts receivable previously identified by Pappas in connection with the Court's Order of February 28, 2018 (ECF No. 811) and any accounts receivable that have come into existence since that time, along with SCH's inventory, bank account, and the equipment identified by VSI in reference to what Pappas identified in connection with the Court's Order at ECF No. 811 by a date certain.

The result of assigning all of these assets to VSI may very well be that SCH goes out of business, but VSI insists that it wishes to take what it can get. During the hearing, VSI expressed its opposition to taking over SCH as a business. VSI reasonably believes that SCH may have tax and contractual liabilities that far exceed its value. In essence, VSI wants to strip SCH of its valuable assets and leave the company with only its liabilities. Again, in the long term, this approach may mean that SCH will go out of business, thus depriving Defendants of their current sources of income. Being without any income, Defendants may then be unable to make additional payments on the Sanctions Order and the underlying judgment. Nonetheless, this is the approach that VSI has elected. Defendants have no basis to dispute it, particularly considering the extent to which they have gone to obstruct VSI's efforts to collect payment on the Sanctions Order and its judgment. The Court dismisses as entirely disingenuous the Defendants' professed concern that stripping SCH of its assets will deprive the Defendants of their ability to ensure that the Sanctions Order and VSI's judgment against them is paid.[4]

---

[4] According to VSI, Pappas has not made a single, voluntary payment toward the Sanctions Order, yet he had the ability to do so. Between 2015 and 2017, for example, Pappas received more than $1 million in payments from SCH, not including the payments that SCH made to his former wife. *See* VSI's Exhibit 5. The Court accepts VSI's proffer in this regard.

12

### 3. Immediate Payment of $100,000

VSI requests that Pappas be directed to "make an immediate cash payment of $100,000 to VSI." I recommend that this request be granted. At the hearing, VSI was unable to specify where Pappas might locate $100,000 worth of cash or assets that could readily be liquidated to make such a cash payment. Pappas's counsel pointed to the exhibits that VSI produced at the hearing as evidence of Pappas's inability to make such a large and immediate payment.

The Court finds that Pappas has not proven that he lacks the ability to make an immediate cash payment of $100,000 to VSI. The Court is unable to credit the argument of Pappas's counsel, which is based on the documents that Pappas himself created, maintained, and produced. Pappas has misled the Court and VSI on numerous occasions. His failure to appear at the hearing to be subject to questioning and cross-examination under oath nullifies his argument that he would be unable to make such a payment. VSI argues that Pappas will "find the money somewhere" to avoid incarceration and a referral of the matter to the U.S. Attorney's Office for criminal contempt.

It may be that the only way to determine whether Pappas has the ability to make an immediate cash payment of $100,000 is to order him to do so and, should he fail to comply with the Court's order by a date certain, order that he be imprisoned until the payment is made. While it is regrettable that the imprisonment of Pappas may be required for him to take the Court's orders seriously, it is my recommendation that the Court imprison Pappas should he fail to make an immediate cash payment of $100,000 to VSI.[5]

---

[5] The Court might also consider imprisoning Pappas on an intermittent basis, releasing him to allow him an opportunity to comply with the Court's order and re-imprisoning him if he fails to do so. The history of this case reveals that the only reliable way to coerce Pappas to comply with the Court's orders is through the loss of his liberty. It is my recommendation that

####      4.      Access to Records

Finally, Defendants request that the Court order Pappas to "allow VSI monthly access to the full books and records of SCH, including the QuickBooks or other electronically stored accounting data actually used by SCH for the conduct of its business." I recommend that the Court grant this request, and note that Defendants did not make any argument in opposition to this request at the hearing.

## IV.   CONCLUSION

In summary, I recommend that the Court grant VSI's requests in full, as set forth below:

1. Pappas, Creative Pipe, Inc. (CPI) and SCH individually and jointly shall transfer and assign all their rights to any and all of the following intellectual property [of] Pappas, CPI or SCH in the form of papers prepared by VSI:
   a. all site furnishing patents owned by Pappas, CPI or SCH, including those patents identified by Pappas in his response to the Post Hearing Order of February 28, 2018 (ECF No. 811);
   b. all copyrights to the names of the products used by CPI and SCH, including the product names for the products that appeared in either the CPI or SCH on-line catalog; and
   c. the right to use the name "Creative Pipe, Inc." in connection with the sale and marketing of site furnishing products; and
   d. the rights to all Product Designs, Names, and Product Designations that were previously supplied and marketed by CPI; and
   e. the bank accounts and physical assets of Torcoat, LLC.
2. Pappas and SCH shall provide to VSI copies of all shop drawings for any product covered in paragraph 1 above and shall assign to VSl the exclusive rights to use of any such drawings;
3. Pappas and SCH shall assign to VSI all SCH accounts receivable identified by Pappas in his response to the Post Hearing Order of February 28, 2018 (ECF No. 811) and any accounts receivable that have come in to existence since the date of that response.
4. The Inventory, SCH Banking Account, Air Compressor, Fork Lift, Sand Blasting Booth, Powder Coating Booth, Powder Coating Oven, Packaging Materials, Tools and Equipment, Pallet Racking, and Electronic Equipment identified by Pappas in his response to the Post Hearing Order of February 28, 2018 (ECF No. 811 ).
5. Pappas shall make an immediate cash payment of $100,000 to VSI; and

---

the Court turn to the Bureau of Prisons for leverage to coerce Pappas to comply with any order it issues in connection with this Report and Recommendation.

6. Pappas shall allow VSI monthly access to the full books and records of SCH, including the QuickBooks or other electronically stored accounting data actually used by SCH for the conduct of its business.

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

July 3, 2018
Date

/s/
Timothy J. Sullivan
United States Magistrate Judge